THE STATE v. AMIL SALTS, Appellant.—56 S. W. (2d) 21.

Division Two, December 14, 1932.

666

*Williams & Stone* and *Charles L. Henson* for appellant.

*Stratton Shartel*, Attorney-General, and *C. A. Powell*, Assistant Attorney-General, for respondent.

FITZSIMMONS, C.—Appellant was found guilty of manslaughter and his punishment was fixed at eight years' imprisonment in the State Penitentiary. The information upon which appellant was tried charged him with the murder in the first degree of Joseph Loughridge in Phelps County, Missouri, on June 26, 1929. Appellant was tried three times. The jury in the first trial failed to agree. Upon the second trial appellant was found guilty of murder in the second degree but he was granted a new trial. The third trial ended with the manslaughter verdict mentioned above. The

motion for a new trial was overruled, final judgment duly rendered and an appeal granted. ...

The evidence is undisputed that the deceased, Loughridge, resided with his family in the southwest part of Rolla, in Phelps County. He was in the business of hauling ashes and rubbish which he dumped along the bank of a branch running through his home place. Appellant, Amil Salts, was deputy marshal of Rolla and his father was the police judge. On June 26, 1929, the police judge gave to appellant a warrant of arrest addressed to the marshal of the city of Rolla reciting that complaint had been made that Loughridge maintained a nuisance on his lot and commanding the marshal to arrest Loughridge and to bring him forthwith before the police judge. On the afternoon of the same day, appellant went to the home of Loughridge and found him seated in a shed sharpening a hatchet. Appellant read the warrant to Loughridge, who put the hatchet away and arose. There is a conflict of testimony as to the subsequent events.

On the part of the State the wife and two sons of Loughridge and other witnesses testified that, after appellant read the warrant to the deceased, he told Loughridge to come with him. Loughridge replied: "No, you go on and I will come." Loughridge then stepped out of the woodshed toward the appellant who stepped backward. Appellant, while he was moving away, unfastened a pistol which he had fastened to his belt, and fired at Loughridge. He moved further away to a point near the wheel of a wagon in the yard and fired two more shots. Appellant himself testified that he fired three times from the hip. Two bullets entered the body of the deceased and produced fatal wounds. The third wound was found in the fleshy part of the right arm, and the coroner testified that he found evidence in the examination of the body to indicate that the wound in the arm and one of the wounds in the body were caused by the same bullet. All of the witnesses for the State testified that Loughridge did not have a hoe or any other weapon in his hands at the time of the shooting; that his arms were down and that he made no menacing threats or movements toward appellant. There was also testimony on behalf of the State that, before appellant went to the home of Loughridge, he was heard to say that when he went to arrest Loughridge he would get him or his carcass.

Appellant on his own behalf testified that, after he read the warrant to Loughridge and told him to come with him, appellant turned and started to leave the woodshed; that Loughridge made some remark which appellant did not hear, and appellant turned and saw Loughridge take a hoe from the woodshed and start toward him with it drawn over his left shoulder in a threatening manner. He further testified that at the same time Loughridge stated that he

would not go with appellant anywhere and that he would kill him. Appellant also testified that he then backed away from the woodshed; that he unfastened his pistol and informed the deceased that he would shoot him if he did not stop; that the deceased continued to advance and appellant fired three shots. Loughridge, after the third shot, staggered over to the corner of his home and fell dead. Appellant offered evidence tending to show that Loughridge had a bad reputation as a peaceable and law-abiding citizen and the State offered testimony to the effect that his reputation was good in these respects. Other details of evidence will be stated in connection with assignments of error.

I. Appellant assigns as error the action of the trial court in overruling his application for a continuance upon the ground of surprise caused by leave given to the State, at the opening of the trial on April·27, 1931, to indorse upon the information the names of additional witnesses. Daisy Chambers, the only one of the additional witnesses called, had been subpoenaed by defendant as a witness for a previous trial in December, 1929, but she did not then testify. The State did not learn that she had seen the shooting until shortly before the last trial. The trial court required the State to disclose to appellant what would be the substance of the testimony of the additional witnesses, and, after disclosure was made, the court offered to delay the trial two days in order that counsel for appellant might prepare to meet the testimony of the additional witnesses. But appellant's attorneys stated that they would stand upon their application for a continuance and that they could not be ready to meet the new situation before the first day of the next term. The trial then proceeded.

Daisy Chambers, the additional witness called, testified that on the day of the shooting, she was in her house across the road from the Loughridge place; that she saw appellant Salts fire the last shot, and that Loughridge at the time was standing near the shed with his hands down and that he did not have a hoe or any other thing in his hands. She also testified that, when she had been subpoenaed by the defendant for a previous trial, she at a conference gave this version of the affair to one of appellant's counsel, who said she would be a good witness for the State. Further testimony of Mrs. Chambers, given at the trial and not previously told to appellant's counsel, was to the effect that, after the killing, appellant himself, accompanied by his daughter, visited Mrs. Chambers at her home, and said to her that she would be well paid if she would swear that Loughridge had a hoe in his hand. It was this part of her testimony which was the surprise upon which appellant rested his application for a continuance for the term, and to meet which he would not avail himself of an offer of a two-day delay of the trial. Ap-

pellant in rebuttal denied that he said to Mrs. Chambers that she would be well paid if she would testify that Loughridge had a hoe in his hand.

The granting of a continuance rests largely in the discretion of the trial court. [State v. Kuebler, 14 S. W. (2d) 449; State v. Messino, 325 Mo. 743, 30 S. W. (2d) 750, l. c. 759, citing State v. Temple, 194 Mo. 237, 92 S. W. 869, 5 Ann. Cas. 954; State v. Wade, 307 Mo. 291, 270 S. W. 298.] The record shows that counsel for appellant were aware of Mrs. Chambers' version of the shooting sixteen months before she was called by the State as a witness. Two days' time would have been sufficient for appellant to meet her testimony that he said she would be well paid if she would testify about the hoe as he suggested to her. It was a question of fact between Mrs. Chambers on the one hand and appellant on the other. While he denied her testimony on this point, he admitted that he visited her as she had stated, and he failed to call his daughter in further rebuttal. The assignment is ruled against appellant.

II. Appellant complains of the refusal of the trial court to excuse the veniremen, John Dean, for cause. Dean, a farmer, who did not in fact serve on the jury, said, on his *voir dire* examination by the State, that he had heard neighbors talk about the case, but that he had formed no opinion of the guilt or innocence of appellant, and that, if selected as a juror, he could and would render a verdict under the law and the evidence. Upon examination by counsel for appellant, Dean, seemingly confused by a long question about an instruction on self-defense, indicated he would follow the evidence rather than the law as declared by the court. The court also questioned the juror, part of its examination being as follows: "Q. And the question that he wants to know is if you will follow the law after the court tells you what it is in the instructions? A. Well, the way I understand it I would follow the evidence. Q. Well, yes, that's right, but now the jury is the judge of the evidence. A. Yes, I understand. Q. Now, the court tells the jury what the law is. Will you follow the law as the court tells you? A. Yes, sir." After a challenge by appellant for the reason that the juror said he would not follow the instruction, the court further asked Dean: "Q. Now, the court will ask you a question again. As I told you, the court gives the instructions as to the law to the jury; will you follow those instructions after the court gives them to the jury? A. Yes, sir. By THE COURT: The objection if overruled." We see no error in that ruling. All challenges for cause are to be tried by the court. [Sec. 3672, R. S. 1929.] And the discretion of the trial court in determining the qualifica-

tions of jurors will not be disturbed unless abused. [Theobald v. St. Louis Transit Company, 191 Mo. 395, 90 S. W. 354, and cases cited and quoted.] This rule, invoked for the most part in cases involving questions of the bias, prejudice and opinions of jurors, should be applicable in a special manner to this case in which the juror was disposed to overstress his adherence to the evidence.

■ III. Appellant assigns error in the cross-examination of Sadie Snodgrass, a witness for appellant. She testified that, immediately after the killing, she heard Mrs. Loughridge say that her husband had a hoe in his hand and was trying to hit appellant Salts. On cross-examination Mrs. Snodgrass was asked whether her husband had obtained a divorce from her during the same term of court. She answered in the affirmative, and only then counsel for appellant objected that that character of cross-examination was intended to prejudice the minds of the jurors,—an objection which the court sustained. She was next asked whether she knew a man named Elms and she answered that she did. Counsel then interrupted with the statement that that was immaterial and the court overruled the objection. The State's attorney next inquired whether she had been living with the man mentioned, and she answered, No, that she had been living with her mother. Counsel for appellant made a very general objection after the answer had been given. The objections, made after the witness had answered, and general in form, did not constitute objections. [State v. Keller (Mo.), 281 S. W. 960.] Objections to parts of the cross-examination of Bertha Arney, a witness for appellant, were equally general and untimely.

■ IV. Appellant urges that the court erred in refusing the offer of appellant to prove by his own testimony that in his capacity of an officer he had previously gone to the home of the deceased and had asked Loughridge to quit dumping rubbish in and near the public streets. There was no offer to prove that Loughridge had made any threats on this former visit of appellant or that there had been any quarrel between the men. On the contrary appellant on direct examination testified that he and Loughridge had not had any trouble prior to the shooting and that they were friends. On cross-examination he emphasized this spirit of mutual good will up to the time of the tragedy in Loughridge's yard. In these circumstances we see no merit in this assignment.

■ V. Appellant charges that the court erred in refusing to permit him to testify as to whether or not he intended to shoot the deceased or to miss him. The error is harmless upon the record of appellant's testimony. After he had testified that Loughridge had seized a hoe, appellant further said: "And he made a run at me

with that hoe, and I commenced to run backward and I run back possibly fifteen feet to the wagon that he had there in the yard, and when I run back I drawed my gun out of my hip pocket, and I drew it up to my hip and shot twice, but as I shot I stumbled over the wagon tongue, and evidently one of the shots hit him. I intended to miss him. By MR. HUTCHISON: We object to what he intended to do. 'BY THE COURT: sustained.''

Thus it will be seen that, before objection was made, appellant testified that he intended to miss him. And although the objection was sustained, the testimony was not stricken. Appellant further testified that after these two first shots, "I told him to stop and if he didn't stop, I was going to shoot him, and he' kept coming, and when he got in about eight steps or eight feet, I fired again.'' Under like circumstances, this court said of a sustained objection as to intention, after answer made, in the case of State v. Fletcher, 190 S. W. 317, l. c. 321: "Under our holdings in State v. Palmer, 88 Mo. 568, and State v. Banks, 73 Mo. 592, this ruling was error; but in what respect was the defendant thereby injured? He had answered the question, and the influence or effect of his answer upon the triers of the fact had been accomplished. [Olfermann v. U. D. Ry. Co., 125 Mo. 408, 28 S. W. 742, 46 Am. St. Rep. 483; Brown v. Railroad, 127 Mo. App. 614, 106 S. W. 551; State v. Curtner, 262 Mo. 214, 170 S. W. 1141.]'' Appellant here was not injured and the error was not prejudicial.

■ ■ VI. Appellant assails Instruction 7 which is as follows: "The court instructs the jury that an officer making an arrest cannot use any more force than is necessary to make the arrest, nor to maintain the arrest and prevent an escape; he is not justified in assaulting a person under arrest any further than is necessary to defend himself from an attack from such person.''

The error as stated in the motion for a new trial is that an officer might under certain circumstances be justified in assaulting a person under arrest to prevent the escape of the prisoner as well as to defend himself; that there was no evidence to justify the instruction and that it was highly prejudicial in assuming that appellant had made an assault on the deceased. These objections are without merit. In order that the act of an officer in shooting one whom he has arrested or is about to arrest may be justified, the act must be done in self-defense; or it must be done to prevent the commission of a felony. An officer is never justified in shooting another, charged with a misdemeanor, in order to arrest or to prevent the escape of the accused. [State v. McGehee, 308 Mo. 560, 274 S. W. 70; 30 C. J. 41.] Section 3985, Revised Statutes 1929, provides that homicide shall be deemed justifiable, first, in

resisting any attempt to murder such person or to commit any felony upon him, or second when committed in the lawful defense of such person when there shall be reasonable cause to apprehend a design to commit a felony or to do some great personal injury; or third, "when necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed." In the instant case, Loughridge had not committed a felony. At most he had violated an ordinance which the city of Rolla, a city of the fourth class, as we may judicially observe (State v. Padgett, 316 Mo. 179, 289 S. W. 954), had enacted in the exercise of its powers "to pass ordinances for the prevention of nuisances and their abatement." [Sec. 7026, R. S. 1929.] In these circumstances there were no facts in this case to justify appellant in shooting Loughridge to prevent his escape. The instruction was unduly favorable to appellant in this that it put before the jury the right of an officer to use necessary force to maintain an arrest and to prevent an escape, although the charge was violation of a city ordinance and the force used was a deadly weapon. ■ The further claim that the instruction was highly prejudicial in assuming that appellant had made an assault is groundless, because the shooting of Loughridge was an assault and appellant himself testified that the third shot was intentionally aimed and fired.

■ VII. Appellant imputes error to Instruction 8, which is as follows: "The court instructs the jury that if you believe and find from the evidence that defendant, Amil Salts, made any threats against the deceased, Joseph Loughridge, then you may consider such threats, if you find there were any so made by defendant, in determining the acts and conduct of the defendant, Salts, at the time of the killing." The objection as stated in the motion for a new trial is that the instruction is a comment on the evidence and therefore is highly prejudicial to appellant. A like instruction on previous threats by the defendant was examined by this court and ruled to be proper in State v. Murphy, 292 Mo. 275, 237 S. W. 529. And, under the circumstances of this case, we find no error in Instruction 8.

Reversible error not appearing, the judgment is affirmed. *Cooley* and *Westhues, CC.*, concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.