THE STATE v. HERMAN FORD, Appellant.—130 S. W. (2d) 635.

Division Two, July 7, 1939.

1220

*Sharp & Sharp* and *Corbett & Peal* for appellant.

*Roy McKittrick,* Attorney General, and *Tyre W. Burton,* Assistant Attorney General, for respondent.

ELLISON, P. J.—The appellant, town marshal of Risco, was convicted of murder in the second degree in the Circuit Court of Pemiscot County on change of venue from New Madrid County, for killing his prisoner Braxtol Gray. His punishment was assessed at ten years' imprisonment in the penitentiary. According to his testi-

mony he was executing a warrant for the arrest of Gray based on a misdemeanor charge when the latter made an assault upon him and attempted to seize his pistol. Thereupon the marshal shot Gray inflicting mortal wounds from which he died four months later. The State's evidence further showed Gray was drunk and belligerent at the time; that he was accompanied by a companion in the same condition who asked him if he needed any help to which Gray answered "Hell, no;" and that he had made threats against the life of appellant within a few hours before the homicide.

At the trial the court gave an ordinary instruction on self-defense but refused two requested instructions, A and B, defining appellant's right as an officer to use force in arresting the deceased. His chief assignment of error on this appeal complains of the refusal of these two instructions. The learned Assistant Attorney General finds no fault with the form of the instructions but contends the appellant was not legally entitled to them. This presents a clear cut issue of law decisive of the case. The instructions were as follows:

## A.

"The court instructs the jury that if you find and believe from the evidence, in this case, that the defendant Herman Ford was the duly elected and qualified marshal of the village of Risco, and if you further find and believe from the evidence that at the time he shot deceased he had a warrant for the arrest of the deceased and if you further find and believe from the evidence that at said time the deceased knew that defendant Ford was such marshal and if you further find and believe that said Ford had probable cause to believe deceased was guilty of such offense, then and in that case defendant had the right to use such force as was necessary to arrest said deceased and that any resistance of deceased to such arrest was unlawful and if defendant used only such force as was necessary to accomplish such arrest then and that case you will find defendant not guilty."

## B.

"The court instructs the jury that if they find and believe from the evidence in this case that at the time of the shooting of the deceased, Braxtol Gray, the defendant was the city marshal of the town of Risco in New Madrid County, Missouri, whose duty it was to serve warrants issued by the Police Judge of said town and that the defendant was attempting to arrest deceased at the time of the shooting under said warrant and while defendant was in the discharge of his duty in attempting to make such arrest, the defendant as such officer met with resistance from the deceased by which a struggle was brought about between defendant and deceased in which struggle deceased was shot and killed, then said killing was justifiable and the right of defendant as such officer to shoot and kill deceased under such circumstances does not depend upon the principle of self de-

fense alone, but on the necessity of defendant as such officer executing his duty.

"The Court therefore instructs the jury that if they believe from the evidence that the defendant was the city marshal of the town of Risco, Missouri, and was in the lawful discharge of his duty attempting to arrest the deceased, having a warrant for such arrest and that deceased forcibly resisted such attempted arrest and brought on a struggle between defendant and deceased and in said struggle it became necessary for defendant as such officer to shoot and kill deceased in order to overcome said resistance and effect said arrest, provided said officer used no greater force than was necessary, then said shooting and killing of deceased was justifiable, although the jury may believe defendant intentionally shot and killed defendant."

The State contends the appellant's right to kill in making the arrest was controlled by Section 3985, Revised Statutes 1929 (Mo. Stat. Ann., p. 2789), which contains three subdivisions defining justifiable homicide. This section has been in our statutes since Revised Statutes 1835, section 4, page 168. The third subdivision, here involved, has remained unchanged during all of that time. In quoting the statute below we set out each subdivision thereof in a separate paragraph, and have also italicized certain words in the second subdivision in two places. The words first italicized were added by Laws 1885, page 139; the words in the second italization appear for the first time in Revised Statutes 1855, section 4, page 559. The statute is as follows:

"Homicide shall be deemed justifiable when committed by any person in either of the following cases:

"First, in resisting any attempt to murder such person, or to commit any felony upon him or her, or in any dwelling house in which such person shall be; or,

"Second, when committed in the lawful defense of such person, or of his or her husband or wife, parent, child, *brother, sister, uncle, aunt, nephew, niece,* master, mistress, apprentice or servant, when there shall be reasonable cause to apprehend a design to commit a felony, or to do some great personal injury, and there shall be *reasonable cause to apprehend* immediate danger of such design being accomplished; or,

"Third, when necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed, or in lawfully suppressing any riot or insurrection, or in lawfully keeping or preserving the peace."

The theory of the State is that under the third subdivision of the statute a homicide committed by an arresting officer is justifiable only when he is apprehending a person for the commission of a *felony;* and that since the appellant was arresting the deceased on a *misdemeanor* charge, the subdivision does not apply, leaving to the ap-

pellant only the ordinary right of self-defense under the second subdivision of the statute. The authorities cited in support of that view are 30 C. J., sec. 196, p. 41; 42 A. L. R., p. 1203, note; State v. McGhee (1925), 308 Mo. 560, 570, 274 S. W. 70, 73(9); State v. Salts (1932), 331 Mo. 665, 673, 56 S. W. (2d) 21, 24(9). Another recent case along the same line is State ex rel. Kaercher v. Roth (1931), 330 Mo. 105, 110, 49 S. W. (2d) 109, 110.

Since the question is mainly one of statutory construction we shall defer consideration of outside authorities until we have reviewed briefly the decisions of Missouri courts. The McGhee case is the converse of this one. There, the defendant prisoner shot an officer who was attempting to arrest him for the commission of an alleged offense in the officer's presence. According to the officer's testimony the defendant made a threatening physical demonstration against him, whereupon he first shot the defendant. Then the defendant shot him. The question was as to the defendant's right of self-defense. The offense, if any, was a misdemeanor; but the decision holds the evidence was insufficient to prove *any* offense, and that the officer therefore had no right to make the arrest at all. The opinion cites Section 3985, supra, but wholly ignores the third subdivision thereof—presumably on the theory of the following dictum appearing therein (we say dictum because the opinion had already held the officer was trying to arrest the defendant when he had committed no offense): "An officer is never justified in shooting one guilty of a misdemeanor to effectuate his arrest or prevent his escape." [30 C. J. 41.]

In the Salts case the defendant town marshal was serving a warrant for the arrest of an accused on a misdemeanor charge. He testified that the misdemeanant advanced toward him threateningly with a hoe drawn over his shoulder and declared he would not submit to arrest but would kill the defendant. The defendant shot and killed him. On appeal the defendant complained of the giving of this instruction: "The court instructs the jury that an officer making an arrest cannot use any more force than is necessary to make the arrest, nor to maintain the arrest and prevent an escape; he is not justified in assaulting a person under arrest any further than is necessary to defend himself from an attack from such person." This Division held that instead of being prejudicial the instruction was unduly favorable to the defendant. In declaring the law on this point the opinion cites Section 3985, supra, the McGhee case and Corpus Juris, supra, saying: "In order that the act of an officer in shooting one whom he has arrested or is about to arrest may be justified, the act must be done in self-defense, or it must be done to prevent the commission of a felony. An officer is never justified in shooting another, charged with a misdemeanor, in order to arrest or to prevent the escape of the accused."

State ex rel. Kaercher v. Roth, 330 Mo. 105, 110, 49 S. W. (2d)

109, 110, is not cited by the State. It was a suit against a constable and his surety for damages inflicted by the former's shooting into an automobile and wounding the plaintiff, a passenger therein. The constable had not been resisted, but was *pursuing* the automobile to arrest the driver for an alleged misdemeanor committed in his presence. The opinion holds the constable "had no right to shoot at the person he was attempting to arrest;" citing 5 C. J., sec. 62,426; 30 C. J., p. 41; 24 R. C. L., p. 966; several decisions from other States, the McGhee case, supra, and Gray v. Earls, 298 Mo. 116, 135, 250 S. W. 567, 573(5). This Gray case is another "pursuit" case, which declares: "It is not lawful in undertaking to arrest for a misdemeanor to shoot the party because he attempts to escape, and a person may make reasonable resistance to an attempt to arrest him illegally."

Only two of the foregoing cases cite Section 3985, supra, and none of them refers to or overrules ten earlier decisions of this court with which they are in conflict. Of these older decisions the first is State v. McNally (1885), 87 Mo. 644, 651-2, et seq. The minority opinion, by SHERWOOD, J., cites the statute aforesaid, and holds in substance that peace officers are under the special protection of the law; and where they use the proper means to effect an arrest even for a misdemeanor or breach of the peace, and are resisted, they may repel force with force and need not retreat; and if the offender be killed in the struggle it will be justified. This, however, is inapplicable to culprits who do not resist, but merely flee to escape arrest. BLACK, J., concurred. The three other judges joined in a separate opinion by NORTON, J., concurring only in the result and saying: "I understand the law to be that, if an officer in making an arrest for a misdemeanor is resisted, he may apply force to accomplish the arrest, 'and if it be necessary to kill the offender to save his own life or person from great bodily harm, he may do so.'"

Three years later the majority opinion in the McNally case was overruled by State v. Dierberger (1888), 96 Mo. 666, 673, et seq., 10 S. W. 168, 170, 9 Am. St. Rep. 380. The author was BLACK, J., who alone had given his full concurrence to the minority opinion in McNally's case; and NORTON, C. J., who wrote the majority opinion in the McNally case, was the sole dissenter in the Dierberger case. The latter decision held what is now Section 3985, supra, is declaratory of the common law and said, quoting from 1 East, Pleas of the Crown, 302: "As to arrest for misdemeanors and breach of the peace, 'it is not lawful to kill the party accused if he fly from the arrest, though he cannot be otherwise overtaken, and though there be a warrant to apprehend him. . . . But, as in case of felony, so here, if the officer meets with resistance and kills the offender in the struggle, he will be justified.'"

Summing up, the Dierberger decision held: "These authors, ancient and modern, lay down the law in substantially the same terms.

They show that the protection which an officer is entitled to receive is a different thing from self-defense. The officer, when making an arrest, may, of course, defend himself, as may any other person who is assaulted; but the law does not stop here. The officer must of necessity be the aggressor; his mission is not accomplished when he wards off the assault; he must press forward and accomplish his object; he is not bound to put off the arrest until a more favorable time. Because of these duties devolved upon him the law throws around him a special protection. As we said, in the recent case of State v. Fuller, ante, p. 165, his duty is to overcome all resistance and bring the party to be arrested under physical restraint, and the means he may use must be co-extensive with the duty.''

This decision has been followed in nine cases.* Their doctrine is buttressed, if not enlarged upon, by another statute not mentioned in any of them, namely, Section 3571, Revised Statutes 1929 (Mo. Stat. Ann., p. 3172), first enacted as Section 1872, Revised Statutes 1879, forty-four years after Section 3985, supra, was placed in our statute law. This later section provides: ''If, after notice of the intention to arrest the defendant, he either flee or forcibly resist, the officer may use all necessary means to effect the arrest.'' The article in which the section appears covers prosecutions for misdemeanors as well as felonies. On its face the statute would appear to authorize the use of all means necessary to effect an arrest, even shooting, either on a misdemeanor or felony charge, and in case of flight or physical resistance. It was referred to but not construed in State v. Rollins, 226 Mo. 524, 536, 126 S. W. 478, 482, which recognizes the doctrine of the Dierberger and subsequent cases cited above. State v. Banks, 258 Mo. 479, 490, 167 S. W. 505, 508, cites it and says it does not justify the use of ''unnecessary force'' in making an arrest; and Gray v. Earls, supra, 298 Mo. l. c. 134, 250 S. W. l. c. 572, also cites it, but without discussion. True, on the next page the opinion declares ''it is not lawful in undertaking to arrest for a misdemeanor to shoot the party because he attempts to escape;'' but that statement does not appear to be made in connection with the statute or in construction of it.

We need not determine here what kind or amount of force an officer may use to effect an arrest when a misdemeanant flees, because this record deals only with a situation where the prisoner forcibly *resisted arrest*. But as to that, we think the doctrine of the Dierberger case

---

*State v. Fuller (1888), 96 Mo. 165, 167-8, 9 S. W. 583; State v. Clayton (1890), 100 Mo. 516, 521, 13 S. W. 819, 820, 18 A. S. R. 565; State v. Turlington (1890), 102 Mo. 642, 658, 15 S. W. 141, 145; State v. Bateswell (1891) 105. Mo. 609, 612-3, 614-5, 16 S. W. 953, 954; State v. Rose (1897), 142 Mo. 418, 426-7, 44 S. W. 329, 331; State v. Lane (1900), 158 Mo. 572, 585-6, 59 S. W. 965, 968; State v. Coleman (1904), 186 Mo. 151, 159-60, 162, 84 S. W. 978, 980, 981, 69 L. R. A. 381; State v. Montgomery (1910), 230 Mo. 660, 669, 672-3, 132 S. W. 232, 234, 236; City of Festus ex rel. Stolzer v. Kausler (Mo. App. 1934), 77 S. W. (2d) 197, 199(4).

is right and that of the McGhee, Salts and Roth cases, reviewed above, is wrong; and that the latter should no longer be followed. The third subdivision of Section 3985, supra, says a homicide shall be justifiable "when necessarily committed in attempting by lawful ways and means to apprehend any person for any felony committed." That language is broad enough to justify a homicide resulting from force (shooting, a blow or the like) necessarily exerted in effecting the arrest of an accused felon in flight. But it is not necessarily a negation of the right to use all force reasonably necessary to effect and maintain against resistance the arrest of a misdemeanant, especially in view of the provisions of Section 3571, supra.

If the latter doctrine were not the law, then, as Judge SHERWOOD said in State v. McNally, supra, 87 Mo. 1. c. 653, "it is patent to the most casual observation that a peace officer 'would be of all men the most miserable,' compelled by his duty to press forward and make arrests when ordinary misdemeanors were being committed, or where, as in the case at bar, some violent and dangerous man was 'making night hideous' with the most flagrant breaches of the peace, the officer would proceed with the consciousness that though the law imperatively demands at his hands the arrest of the law breaker, yet it gave no adequate powers for the accomplishment of the end commanded, but while placing the officer in position of extreme peril took from him all protection arising from his official character and the performance of his official duty and placed him on the same plane as an ordinary individual when engaged in a private quarrel, and invoking the doctrine of self-defense. The bare statement of such a proposition constitutes its own ample refutation. The law never requires an impossibility, and having made it the duty of peace officers to make arrests, to quell disturbances and breach of the peace, it is not so unreasonable as to deny the means to compass the end commanded."

State ex rel. Kaercher v. Roth, supra, 330 Mo. 1. c. 110, 49 S. W. (2d) 1. c. 110, looks to 5 Corpus Juris, section 62, page 426, note, 95a(2), and State v. McClure, 166 N. C. 321, 330, 81 S. E. 458, for the reason behind the rule forbidding the use of a deadly weapon in making arrests on misdemeanor charges. These are quoted as follows: "As the lawmaking power itself could not inflict the death penalty as a punishment for a misdemeanor, 'it would ill become the "majesty" of the law to sacrifice a human life to avoid a failure of justice in the case of a petty offender who is often brought into court without arrest and dismissed with a nominal fine.' "

That may be true when the accused flees, but how can it be thought the majesty of the law is served by subjecting peace officers to invited personal violence in the apprehension of misdemeanants and making the arrest contingent on which is the "better man." Section 3985, supra, expressly covers felonies. The punishment in all but a few is

less than death. As to some the maximum punishment is only two years in the penitentiary and may even be graduated down to a fine of $100. For instance, see Section 4029, Revised Statutes 1929 (Mo. Stat. Ann., p. 2835), forbidding the carrying of concealed weapons. Section 3985, also expressly covers rioting and breaches of the peace, both of which are misdemeanors, Sections 4222, 4247, Mo. Stat. Ann., pp. 2985, 2965. The footnotes to 5 Corpus Juris, page 426, note 95, and .30 Corpus Juris, page 41, note 90, indicate the weight of authority is against the view we have taken in this case. But the analysis of the decisions in 3 A. L. R., pp. 1170, 1175, note, and 42 A. L. R. 1200, 1203, note, shows that many well reasoned decisions support it.

■ We are not to be understood as commending the form of appellant's refused Instructions A and B *in toto*. Neither are we holding they are bad. We are not scrutinizing them critically because the learned Assistant Attorney General does not criticize them as to form, but says only that their whole theory is wrong. If they were not correct it was the duty of the trial court to give instructions that did properly embody their theory, since they dealt with an affirmative defense akin to and even broader than self-defense. The latter is a part of the law of the case and under the statute the court must instruct on it where there is evidence putting it in issue, whether requested or not, and even though instructions submitted by defendant on that point are defective. [State v. Singleton (Mo. Div. 2), 77 S. W. (2d) 80, 83 (2); State v. Moncado (Mo. Div. 2), 34 S. W. (2d) 59, 60(2).] In fairness to the trial court, the prosecuting attorney and the Attorney General's office, we will say, however, that their positions, severally, were supported by the last controlling decisions on the question, namely, the McGhee, Roth and Salts cases. We have simply overruled those decisions in the interest of justice and to conform to sound precedents in this State.

The judgment is reversed and the cause remanded. All concur.