Joseph W. WALSH and Dolores Walsh,
Respondents-Plaintiffs,

v.

Rudolph OEHLERT et al., Appellants-
Defendants.

No. 35278.

Missouri Court of Appeals,
St. Louis District,
Division 2.

March 26, 1974.

Jack Koehr, City Counselor, James J. Gallagher, Associate City Counselor, St. Louis, for defendants-appellants.

Charles R. Oldham, St. Louis, for plaintiffs-respondents.

McMILLIAN, Judge.

This is an appeal by defendant Rudolph Oehlert, a St. Louis Police Officer, from a judgment of the Circuit Court of the City of St. Louis, in the amount of $1000.00 awarded by a jury to plaintiffs, in an action for the wrongful death (shooting) of their son, Timothy Walsh, a sixteen year old juvenile.

Originally, plaintiffs sued eight Metropolitan Police Officers; but the cause was submitted to the jury only against defendant and Officer Phillip Gaffney. Plaintiffs submitted their case against Officer Gaffney on the theory that he used unreasonable force against their son, but the jury found against plaintiffs on this issue and in favor of defendant Gaffney.

After the court overruled defendant Oehlert's motion for a directed verdict at the close of all the evidence, plaintiffs submitted their case against him on the theory that he failed to inform defendant Gaffney that Timothy Walsh was a juvenile and that he was only a suspect for an alleged shooting, or to exercise reasonable care to prevent Officer Gaffney from shooting at Timothy Walsh.

Inasmuch as the facts are not in dispute, we give only a brief resume as to the occurrence. Timothy Walsh, on the morning of October 13, 1966, was arrested at his place of work by three officers, one of whom was Officer Oehlert. Oehlert brought Walsh to the ninth district station booking desk where Oehlert decided to search Walsh's shoes. While Walsh was tying on his second shoe, he bolted across the lobby and dove through the window. Unable to restrain Walsh as he dangled from the window, Oehlert called for help. Officer Gaffney heard the call and responded.

Officers Oehlert and Gaffney pursued Walsh across the street, repeatedly admonishing him to halt. Walsh took no heed, and ran into the gangway between a church and residence, vaulted a fence, and continued running in a westerly direction. When Officers Oehlert and Gaffney reached the fence Officer Gaffney, fired his pistol, aiming at Walsh's legs. However, at the moment the shot was fired, Walsh had reached the fence at the other side of the yard, 45–50 feet away from the pursuing officers, and was jumping down to the adjoining yard. The top of this far fence was approximately 6–10 inches above the level of the ground upon which Officers Oehlert and Gaffney were standing. The bottom of this far fence was the ground of an adjoining lot, approximately 3½ to 4 feet *below* the level of the ground upon which Officers Oehlert and Gaffney were standing. As Walsh was jumping down, or, evidently immediately after he had made contact with this lower level, the bullet fired by Gaffney struck Walsh in the back, which wound resulted in Walsh's death.

Plaintiffs predicated their theory of liability against defendant Oehlert upon his negligence and wrongful acts which they alleged caused or contributed to cause the death of Timothy Walsh. For support they cite, 47 Am.Jur. 851, Sheriff, Police and Constables, § 42, and cases cited therein, for the general proposition that peace officers are generally held personally liable for negligence or wrongful acts that cause personal injury or death. Moreover, a police officer has no right to negligently injure a person whom he has arrested or detained, and if the arrestee is injured he is liable to the injured party in the same manner as a private individual. See also 60 A.L.R.2d 873, 879, wherein, apparently, this rule is followed in Missouri. Although the cases cited therein do not affirmatively espouse the above proposition, some hold an officer's surety liable when that officer exceeds his authority and one case does, indeed, hold law officers liable for their negligent acts, Lemonds v. Holmes, 236 S.W.2d 56 (Mo.App.1951). Nevertheless, at page 888 of 60 A.L.R.2d, the Missouri case of McKeon v. National Casualty Co., 216 Mo.App. 507, 270 S.W. 707, 712 (1925), is cited, which case affirmatively states that, ". . . officers may only arrest felons and those probably suspected of felonies, and kill felons or those justly suspected thereof who flee or resist . . ."

Under the common law and the laws of Missouri, a police officer may use deadly force to apprehend, as a last resort, an accused fleeing felon. 4 Black.Comm. 170; 1 Hale P.C. 494; § 544.190, RSMo 1969; V.A.M.S.; and State v. Nolan, 354 Mo. 980, 192 S.W.2d 1016 (1946). Section 544.190 RSMo 1969, V.A.M.S., provides as follows:

"If, after notice of the intention to arrest *the defendant,* he *either flee* or forcibly resist, *the officer may use all necessary means to effect the arrest.*" (Emphasis added.)

In the *Nolan* case, our Supreme Court held that a police officer was justified in using deadly force to apprehend a felony suspect based on *probable cause,* if a felony had actually been committed. A presumption was also upheld that police officers are in the lawful discharge of their duties when making arrests.

In State v. Ford, 344 Mo. 1219, 130 S.W.2d 635 (1939), the court, interpreting what is now § 559.040, RSMo 1969, V.A.M.S. stated that a homicide is justified if ". . . [R]esulting from force (shooting, a blow or the like) necessarily exerted in effecting the arrest of an accused felon in flight." This case involved the use of force by an officer who was attempting to arrest an individual on a misdemeanor charge. Even at that time, in 1939, there was no doubt that an officer could use fatal force in attempting to arrest a fleeing felon, although the court indicated that it would be unlawful to shoot an escaping misdemeanant whom the officer was attempting to arrest.

From these earlier interpretations the statutes of the State of Missouri in criminal cases and law has evolved the rule in civil cases that an officer may use only such force as is reasonably necessary to apprehend an individual in the commission of a crime. In City of Gallatin ex rel. Dixon v. Murphy, 217 S.W.2d 400 (Mo.App.1949), the court indicated:

". . . An officer may use such force as is necessary to effect his purpose, and if the offender resists him he may use such force as is necessary to effectively arrest, even to injuring or killing the offender. However, there is a limitation on the officer's right to kill in making an arrest or in repelling an assault during an arrest. The line of demarkation is that he may not use more force than is reasonably necessary to accomplish the arrest. The officer is not arbitrarily the judge that it was necessary for him to kill in order to secure his prisoner. The exigencies of the situation must have been such that there was a necessity for the killing, and whether such necessity existed, as a matter of fact, is a question for the jury. State v. Havens, Mo., . . . 177 S.W.2d 625, loc.cit. 628."

This rule has consistently been followed up to the present time and is generally followed throughout the United States. See also Manson v. Wabash Railroad Company, 338 S.W.2d 54 (Mo.banc 1960), where the court, in discussing whether there was an actual assault by a watchman, stated:

". . . A police officer, in this case a watchman, may use such means or force as is reasonably necessary in the circumstance to accomplish an arrest. . . . Unless a plaintiff can show that unnecessary force was used, courts will protect the officer. 6 C.J.S. Assault and Battery § 23(1), pp. 825, 826; Hutchinson v. Lott, Fla.App., 110 So.2d 442, loc.cit. 444(1, 2) . . ."

From these authorities, we hold that an officer, where he has probable cause to make an arrest for felony may use a reasonable amount of force in the discharge of his duties to prevent the arrestee from escaping.

It is not contended that Officer Oehlert did not have probable cause to arrest Timothy Walsh as a suspect for the alleged shooting of a person at a used car lot at Spring and Chouteau Avenues. Thus the question becomes, first, whether a juvenile can be arrested. In the case of Bond v. Wabash RR Co., 363 S.W.2d 1 (Mo.1962), the court, in discussing the arrest of a twelve year old for a misdemeanor under a City Ordinance indicated that officers (in the Bond case, a private watchman) had the authority to arrest a twelve year old boy for a violation of a City Ordinance. Citing 4 Am.Jur., Arrest, § 93, p. 64, the court said that ". . . Infancy provides no immunity from arrest. . . ." While in a technical sense, a juvenile is not arrested, but taken into custody, pursuant to § 211.061 RSMo 1969, V.A.M.S., the physical action of detention is the same. Neither plaintiffs' brief nor our research has discovered any authority for the proposition that a fleeing felon may not be apprehended by deadly force simply because he is a juvenile.

Section 211.031(1)(d), RSMo 1969, V.A.M.S., grants to the Juvenile Di-

vision of the Circuit Court exclusive original jurisdiction over persons under seventeen years of age. But, by the terms of § 211.071, RSMo 1969, V.A.M.S., a child of 14 years or older may, within the discretion of the juvenile court, be prosecuted under the general law. Therefore, since under certain circumstances the general law may be applied to juveniles, and because there is no special exception granted to juveniles in § 544.190, RSMo 1969, V. A.M.S., we hold § 544.190, supra, applicable to both infants and adults.

The facts of the *Nolan* case are similar to those of the principal case. Three officers on patrol, having been advised by police radio of the burglary of a tavern, were informed by the "night man" in a nearby restaurant that a "dirty little boy" came in at 2:00 A.M., to exchange the same amount of change reported stolen in the burglary, for a ten dollar bill. The officers located the boy a short distance away, got out of their squad car, and began questioning him. The boy bolted away and the officers gave chase, one on foot, the other in the squad car. The officer in the squad car drove a short distance after the boy, alighted from the car, demanded that the boy halt, and then fired. He hit the boy in the legs but the boy fired back, killing the officer. The boy was convicted of manslaughter and appealed.

■ The boy first contended that he had a right to resist because the arrest had been unlawful. In denying this claim the court cited State v. Whitley, 183 S.W. 317 (Mo.1916), where a defendant in a similar situation had killed an arresting officer in a struggle. Defendant there contended that his arrest was unlawful because the arresting officer had no knowledge of the felony defendant supposedly had committed. The court in *Whitley* rejected this defense and stated that a police officer without a warrant may arrest *any person* "who is in fact guilty of a recent felony, whether the officer be advised of such felony or not . . . ." Applying this rea-

soning to the principal case it would not matter whether Oehlert had informed Gaffney that Walsh was under arrest for a shooting (though he in fact did) as long as Gaffney had a reasonable ground to suspect that the person arrested had committed a felony; and because the *Nolan* court cited a case using the term "any person," in its case which involved the shooting of an infant fleeing arresting officers, the rule above would apply to infants as well as adults.

The *Nolan* court then cites the 1939 Revisions of § 544.190 and § 559.040, RSMo 1969, V.A.M.S. and holds that while a suspected felon has no right to resist, officers have the duty to arrest "in all lawful instances . . . ." and " . . . are entitled to overcome flight or resistance with superior force, to the extent of killing the felon if necessary." *Nolan*, 192 S.W. 2d at 1020. There is no exception made for infancy, though the very case concerns an infant.

■ Secondly, the question as to the use of unreasonable force is closed by the jury verdict in favor of Officer Gaffney. On the other hand, the jury found against defendant Oehlert, who did not use any force on the novel theory that he did not inform the other officers that: (1) the decedent was wanted for a shooting and that he was a juvenile, or (2) that defendant Oehlert failed to take steps to prevent Officer Gaffney from firing the fatal shot.

■ The claim that defendant Oehlert failed to inform others that the decedent was wanted for a shooting is refuted by the evidence. The evidence in this respect, that he did inform Gaffney that Walsh was wanted for a shooting, was clear and undenied; thus, we rule this point against plaintiffs. The second claim of plaintiffs' alternative theory that defendant Oehlert failed to inform Officer Gaffney that young Walsh was a juvenile is without merit. Plaintiffs have not referred us to any case where a plaintiff has been permitted to recover damages simply

upon the grounds that a police officer failed to inform another officer as to the age of a fleeing felon. Timothy Walsh's minority did not alter the duty of both defendants Oehlert and Gaffney to use such force as reasonably necessary to prevent his escape. Inasmuch as minority does not grant immunity from arrest (custody) and does not alter the duty imposed upon both Oehlert and Gaffney under § 544.190, RSMo 1969, V.A.M.S., we hold that defendant Oehlert did not have a duty to inform Officer Gaffney as to the minority of the decedent. Because even if Oehlert had informed Gaffney that young Walsh was a juvenile, Officer Gaffney would have still been charged with the duty to prevent his escape by the use of a reasonable amount of force so as not to become frustrated in the discharge of his lawful duty. Consequently, failure to inform another officer that the escapee is a juvenile was not and could not be the proximate cause of the unfortunate mortal wounding of the decedent.

Finally, we consider plaintiffs' second alternative theory that defendant Oehlert should have taken steps to prevent Officer Gaffney from shooting Timothy Walsh. Defendant Oehlert and Officer Gaffney were independently appointed and acting officers. Both had the same duty, and once Officer Gaffney had been informed by defendant Oehlert that the decedent was wanted for a shooting either or both to prevent his escape could use reasonable force to apprehend him. Under the circumstances of this case, we find no duty imposed upon defendant Oehlert to prevent Officer Gaffney from shooting the decedent. Therefore, we find this point against the plaintiffs.

Judgment reversed with directions to the trial court to enter its judgment in favor of defendant Oehlert and against plaintiffs because plaintiffs have failed to plead and prove a cause of action upon any theory.

Judgment reversed.

SMITH, P. J., and CLEMENS, JJ., concur.