Village of Dolton, Appellant, v. James Harms, Jr. et al., Appellees.

Gen. No. 43,308.

108

Heard in the second division of this court for the first district at the February term, 1945. Opinion filed November 6, 1945. Released for publication November 20, 1945.

HAROLD L. SUMMERFIELD, of Chicago, for appellant.

ADCOCK, FINK & DAY, of Chicago, for certain appellee; EDMUND D. ANCOCK and JOHN W. DAY, both of Chicago, of counsel.

OTTO F. REICH, P. A. RATTRAY, both of Chicago, and BURTON EVANS, of Harvey, for certain other appellees.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Plaintiff states that "this is an action in equity for a recovery by the plaintiff against the defendant treasurer and the sureties on his official bonds in the sum of One Hundred Fifty Thousand Dollars, and for an accounting to determine the amount of recovery to be allowed on the said bonds." Defendant Garrett Jacobsma and defendant John S. Van Deursen, who appear in the title of the case as appellees, were not served with process and neither entered his appearance. Defendant John Harms, Sr., died December 20, 1944.

After plaintiff had filed its amended complaint, defendants John Harms, Sr., John Harms, Jr., Horace Holmes and Aetna Casualty and Surety Company filed a written motion praying that the amended complaint be stricken and the suit dismissed. Many grounds were urged in support of the motion. The trial court entered an order sustaining the motion "on the sole ground that the above entitled cause is barred by the five year Statute of Limitations of Illinois." Plaintiff elected to stand upon its amended complaint and declined to plead further, and the cause was thereupon dismissed. Plaintiff appeals.

The amended complaint alleges that plaintiff is a municipal corporation, located in Cook county; that Garrett Jacobsma was Treasurer of plaintiff Village starting on May 1, 1928, and that he performed the duties of the office until May 1, 1929; that John Harms, Jr., was duly appointed as Treasurer of plaintiff Vil-

lage on April 24, 1929, and qualified; that The Aetna Casualty and Surety Company was surety upon the bond filed by him; that on May 1, 1930, said Harms was reappointed as Village Treasurer and filed a renewal certificate, executed by said Surety Company, which continued the said bond until April 30, 1931; that on May 1, 1931, said Harms was reappointed as Treasurer of the plaintiff Village for one year commencing May 1, 1931, and filed a bond in the penal sum of $150,000 with said Surety Company as surety; that on December 15, 1931, Harms, Jr., as principal, and John Harms, Sr., John S. Van Deursen and Horace Holmes executed a surety bond in the sum of $60,000; that numerous special assessment proceedings were confirmed on behalf of plaintiff Village during the term of office of the Treasurers hereinabove named, warrants were issued for the collection of the assessments, and substantial amounts of money were collected pursuant thereto and came into the hands of the Village Treasurers heretofore named; that funds collected in connection with the special assessment proceedings by the Village Collector of plaintiff Village, and by the County Collector of the County of Cook, and by them remitted to the Village Treasurers of plaintiff Village hereinabove named, were funds collected solely for the purpose of paying the bonds and vouchers issued to defray the cost of construction of the improvements confirmed in the special assessment proceedings and could be used for no other purpose whatsoever, and constituted trust funds to be used only for the purpose of retiring *pro rata* bonds issued in the respective installments of the respective special assessment proceedings in connection with which the moneys were remitted to the Village Treasurers; that the handling and disbursement of said special assessment funds according to law was one of the duties and obligations of the Treasurer of plaintiff Village in office during the period the various funds were received from time to time; that said Village pro-

vided adequate and proper books and records for use concerning special assessment funds and in compliance with the law; that said Village had regularly caused to be made audits of the collections and disbursements of the Village Treasurers for the purpose of determining the amount of funds still on hand applicable to the respective special assessment and the installments thereof; that commencing with the year 1936, claims were made against said Village because of the fact that said special assessment funds had not been properly disbursed by the Village Treasurers in office from time to time, and said Village was made party defendant in several cases that arose as the result of the method of handling special assessment funds by the Village Treasurers hereinabove named; that several of the cases have gone to final decree and the municipality was held liable for substantial sums of money; that numerous other claims have been made against said Village for payment out of general corporate funds of substantial sums of money because of the method of handling special assessment funds by the treasurers heretofore named, said treasurers having diverted collections made on account of special assessments from principal to interest, from one installment to another installment in the same special assessment, and having failed to prorate collections proportionately as between holders and owners of bonds in the same installment of various special assessments, which acts were the acts of the Village Treasurers of said Village, and contrary to their duties as treasurers; that as a result of the filing of said proceedings and the claims thereunder, plaintiff ordered an analysis prepared by a firm of certified public accountants to determine in what respects the Village Treasurers of said Village hereinabove named had failed to prorate collections, as provided by law; the summary of said analysis showing the payments by the Village Treasurers on account of bonds and interest coupons in excess of the moneys received by the

said Treasurers properly applicable thereto, thereby paying out more money than there was in the respective installment, or by failing to prorate the moneys equally among bondholders entitled thereto because of giving a preference to some bondholders over others, is made a part hereof, as Exhibit E; that said Village had no knowledge of the said wrongful acts of the Village Treasurers prior to the preparation of said analysis, and ordered by the municipality after the institution of the first proceedings in the year 1936; that the Village does not know what the total amount of liability on behalf of the Village is because of the acts of said Treasurers which were contrary to law, and that said liability can only be determined after an audit has been made subject to the supervision and direction of a court of chancery of all of the special assessment records of said Village from May 1, 1928, up to and including April 30, 1932; *that no claim on behalf of the municipality is made that said Treasurers received any of the money personally; nor is any claim made in connection with the handling of any funds except the special assessment funds which constituted trust funds which can only be used for a specific purpose as provided by law.* Plaintiff prayed that an accounting may be taken of all special assessment moneys turned over to said Village Treasurers; that it may be determined whether or not any funds were illegally and improperly paid out by said Treasurers; that defendants herein may be adjudged and decreed to pay to plaintiff what if anything appears to be due from them or any of them; that plaintiff may have such other and further relief as equity shall require and which to the court shall seem meet. Attached to the amended complaint as exhibits were copies of the several bonds referred to in the complaint.

Plaintiff's contention that in determining this appeal we can consider but one question, viz., whether the trial court was justified in holding that the action

was barred because of the five year Statute of Limitations, is without merit. Defendants have the right to sustain the judgment upon any ground warranted by the record irrespective of whether the particular reasons given by the trial judge or his specific findings are correct. (*Bullman v. Cooper*, 362 Ill. 469, 472; *Hillmer v. Chicago Bank of Commerce*, 375 Ill. 266, 272.)

At the outset, it must be noted that the amended complaint does not charge that any of the alleged diversions were wilful or that the Treasurers converted any funds to their own use. Indeed, the complaint specifically disavows any claim of malfeasance on the part of the Treasurers. During the entire period involved in the instant suit (May 1, 1929, to May 1, 1932) Section 43 of the Local Improvement Act as amended in 1927 (1929 Cahill Ill. Rev. Stat., Chap. 24, Par. 169) was upon the statute books. It read as follows:

"Sec. 43. Whenever sufficient funds are on hand for that purpose the treasurer of the municipality shall select by lot bonds of series, to such amount, to be paid therewith and shall send notice by registered mail to the address of the original purchaser (or known present or subsequent owner) of each of such bonds, as set out in the treasurer's records, stating that the designated bonds will be paid thirty (30) days thereafter at his office and the treasurer also shall give notice in some newspaper published in such municipality (or if none be so published, then in some newspaper published in the county in which such municipality is situated), of the number of bonds to be so paid, the series thereof, the assessment to which they relate, and the particular bonds so selected to be paid, and that the same will be paid, at said time and place to be specified. And thereupon, from and after such specified date of payment, said bonds shall be payable at the place so appointed, on demand, and no further interest shall accrue thereon. The mailing and publishing of notice

may be ommitted [omitted] if the bonds called for payment are presented for payment." (Session Laws of 1927, page 253.)

In *Rothschild v. Village of Calumet Park,* 350 Ill. 330 (opinion filed October 22, 1932; rehearing denied December 7, 1932), it was held that Section 43 as amended was unconstitutional, upon the ground that the Amendatory Act of 1927 amending certain sections of the Local Improvement Act failed to include Section 43 in its title, and that the attempted amendment of Section 43 was of no effect and the Section as it existed prior to the attempted amendment remained in force. During the period involved in the instant suit certain ordinances of the Village of Dolton that pertained to the Village Treasurer provided: "Section 2. (*Receive All Moneys.*) The Treasurer shall receive all moneys belonging to the Village and shall render at the end of each and every month, and oftener, if required, a statement under oath, to the Board of Trustees, showing the state of the treasury at the date of such account, and the balance of the money in the treasury; said statement shall set forth all the moneys received by him, from whom, and on what account they shall have been received; also all moneys paid out by him, and on what account they shall have been paid."
"Section 3 provided for the treasurer keeping books of account showing the various accounts and the moneys paid out and in such manner 'as to be readily understood and investigated.' Section 4 provided for the books being kept on a double entry basis showing 'a full detailed account with all village funds, general tax receipts, and receipts from other sources, also a bond account, sinking fund account and forfeit account in the Village Ledger. He shall keep a "Special Fund" Ledger in which all special funds and installments of special funds shall be kept separately by numbers and names of the special funds, showing the total amount of each fund and installment of same to

be collected and each account to show the total collections and disbursements on account of same; payments by warrants only to be charged against said accounts.'" As there is no allegation in the amended complaint that the Treasurers did not perform their duties as required by the Village ordinances, it will be presumed that they did perform said duties. Furthermore, the amended complaint alleges that "the Village . . . regularly caused to be made audits of the collections and disbursements of the Village Treasurers for the purpose of determining the amount of funds still on hand applicable to the respective special assessment and the installments thereof."

Plaintiff contends: I. "The plaintiff's suit on the official bond of its former treasurer is not barred by the Five Year Statute of Limitations." II. "The plaintiff's suit is not barred by the Five Year Statute of Limitations as Special Assessment Funds are trust funds, both in the hands of the Village and of the Treasurer thereof." Plaintiff admits that the instant suit was filed more than five years after the term of office of John Harms, Jr., ended, but contends that the suit is based upon the bond furnished by the Treasurer and therefore Section 17 of the Limitations Act governs. That Section (Ill. Rev. Stat. 1945, ch. 83, par. 17, sec. 16 [Jones Ill. Stats. Ann. 107.276]) provides that "Actions on bonds, promissory notes, bills of exchange, written leases, written contracts, or other evidences of indebtedness in writing, shall be commenced within ten years next after the cause of action accrued; . . ." *People for use of Stubblefield v. Wochner,* 244 Ill. App. 30, was an action against a sheriff and sureties upon his official bond, for damages alleged to have been occasioned through the wrongful seizure of certain property of the plaintiff. The defense of the five year Statute of Limitations was made by special plea. The plaintiff, contending that the ten year statute controlled, demurred to the special plea,

which demurrer was overruled, and plaintiff electing to stand on his demurrer judgment was entered for defendants. On appeal the plaintiff contended that the ten year Statute of Limitations applied, as the action was based upon a written instrument. The Appellate court stated (pp. 34, 35, 36):

"It is contended by appellees that if the action were against the sheriff alone to recover damages for the taking of the note, the 5-year statute would bar the action. *Carr v. Barnett*, 21 Ill. App. 137; *Pennsylvania Co. v. Chicago, M. & St. P. Ry. Co.*, 144 Ill. 197. As far as the officer himself is concerned, his official bond does not extend the obligation imposed on him by law and he is obligated faithfully to perform his official duties just as effectually without signing any bond, unless by force of constitutional or legislative provision. Since the officer is already bound by law to perform the duties pertaining to his office, the bond is in effect merely a collateral to his official duties. 22 R. C. L. 497; *Walton v. United States*, 9 Wheat. (U. S.) 651; *People v. Putnam*, 52 Col. 517, 122 Pac. 796.

"Numerous cases are cited by appellee as to the law in other States upon this question, and it is held: In actions against public officers on their official bonds it has been said that, 'While it is true this is an action against a bond, it is not an action on a written contract, as the basis of the action is the wrongful and illegal act of the principal upon which the liability of the surety is dependent.' *Hillyard ex rel. Tanner v. Carabin*, 96 Wash. 366, 165 Pac. 381; *Board of Com'rs of Graham Co. v. Van Slyck*, 52 Kan. 622, 35 Pac. 299.

"The gist of the action is not the bond but the wrongful act of the officer. The bond is more in the nature of a collateral security and the cause of action is the misfeasance or malfeasance of the officer. *State v. Conway*, 18 Ohio St. 235; *State v. Blake*, 2 Ohio St. 147.

" 'The bond does not give the cause of action; the wrongs or delicts do; and the bond simply furnishes security to indemnify the persons who suffered by reason of such wrongs or delicts; . ˙. . When the principal debt or cause of action fails, the security must also fail; and, as we have stated before, a sheriff's bond is simply a security, collateral to the main cause of action.' *Ryus v. Gruble,* 31 Kan. 767, 3 Pac. 518; *People v. Putnam,* 52 Col. 517, 122 Pac. 796; *Spokane County v. Prescott,* 19 Wash. 418, 53 Pac. 661.

"A sheriff's or constable's bond is simply collateral security for the performance of the officer's duties and when suit is barred for a breach of his duty action is also barred on his bond. *Phillips v. Hail* (Tex. Civ. App.), 118 S. W. 190; *Ryus v. Gruble,* 31 Kan. 767, 3 Pac. 518; *Paige v. Carroll,* 61 Cal. 211; *Sonoma County v. Hall,* 129 Cal. 659, 62 Pac. 257.

"Whenever a cause of action is barred by any statute of limitations, the right to maintain a cause of action, therefor, upon a bond which simply operates as a security for the same thing, must necessarily cease to exist. *Ryus v. Gruble, supra.*

"So far as actions of this character are concerned, the limitation acts upon the cause, not the form of the action. *Chipman v. Morrill & Webster,* 20 Cal. 130, 137; *Spokane County v. Prescott,* 19 Wash. 418, 53 Pac. 661, 67 Am. St. Rep. 733. If no cause of action exists against a principal there can be none against the surety. *Leeds Lumber Co. v. Haworth,* 98 Iowa 463, 67 N. W. 383, 60 Am. St. Rep. 199, 207 (note)." The judgment of the trial court was affirmed. *People for use of Hammond v. Graydon,* 306 Ill. App. 163 (leave to appeal denied 306 Ill. App. xxxiii), was an action against a former sheriff and the surety on his official bond for damages alleged to have been sustained on account of an alleged wrongful levy made by the sheriff. The defendants' motion to dismiss on the ground that

the action was barred by the five year Statute of Limitations was sustained and the plaintiff refusing to plead further the suit was dismissed. On appeal the court, speaking through Mr. Justice O'CONNOR, said (p. 166):

■ "The gist of an action on the sheriff's official bond is the officer's wrongful act and is barred by the 5-Year Statute of Limitations (sec. 15, ch. 83, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 107.275]); *People for use of Stubblefield v. Wochner,* 244 Ill. App. 30; *County of Sonoma v. Hall,* 132 Cal. 589; *Commissioners of Graham. Co. v. Van Slyck,* 52 Kan. 622; *Spokane Co. v. Prescott,* 19 Wash. 418; *Hillyard ex rel. Tanner v. Carabin,* 96 Wash. 366; *Ryus v. Gruble,* 31 Kan. 767; *People v. Van Ness,* 76 Cal. 121; *People v. Putnam,* 52 Colo. 517, Ann. Cas. 1913 E. pp. 1264–1266, 22 R. C. L. sec. 196." The court then quotes, with approval, certain parts of the opinion in the *Wochner* case (244 Ill. App. 30) that we have heretofore quoted. Mr. Justice O'CONNOR continues (pp. 167, 168):

"In sec. 196, p. 510, 22 R. C. L. in discussing the Statute of Limitations in connection with official bonds it is said that the statute does not commence to run against the action until the close of the principal's term of office 'though the conversion of which he is found guilty took place at a much earlier time. . . . Since a bond normally does not increase the liability of a public officer but operates as collateral security against his wrongful acts, it follows that when a cause of action is barred as against the principal it is barred against the sureties.'

"The *Van Ness* case [76 Cal. 121], was an action against the commissioner of immigration and his surety. The court after holding the Statute of Limitations barred the action said: 'public officers and their bondsmen cannot be harassed by suits brought after the statutory periods of limitation have expired.' And in the *Hall* case, [132 Cal. 589], an action was brought

on the official bond of the county recorder for failure to pay over to the county fees collected by him. The court there referred to a number of authorities and held that the gist of the action was the failure of the principal to pay over the money; that the bond imposed on the principal no obligation different from that created by the statute and it was not the gist of the action but merely collateral thereto. 'The bond is not the cause of action, but collateral thereto, and a means of which the county might avail itself.'

"In the instant case, the court did not err in sustaining the defense of the Statute of Limitations."

*People for use of Town of New Trier v. Hale,* 320 Ill. App. 645 (leave to appeal denied 321 Ill. App. xv), was a suit in equity brought by a taxpayer on behalf of the Town of New Trier against the Town Collector and sureties on his official bond, to recover Township moneys claimed to have been wrongfully withheld by the Town Collector. The trial court dismissed the suit for want of equity on the ground, *inter alia,* that the action was barred by the five year Statute of Limitations. On appeal the First Division of this court stated (p. 653) : "We hold that section 15 of the Limitations Act is applicable and that it is a good defense to plaintiff's suit." Plaintiff seeks to evade the effect of the foregoing cases by contending that in the instant proceeding the Treasurers' bonds "contain an express covenant to pay a specific debt or amount," but there is no covenant in the bonds to pay a specific debt or amount. The plain purpose of the bonds is to secure faithful performance on the part of the Treasurers and the guarantee that the officer at the end of his term shall turn over to his successors records, moneys, etc., belonging to the Village.

We will briefly refer to the four cases cited by plaintiff in support of its contention that the ten year Statute of Limitations governs. *Siefker v. City of Chicago Heights,* 297 Ill. App. 113, 117, held that the

City of Chicago Heights "was a mere trustee for the collection of these funds, they being the proceeds of a special assessment, or trust fund, for the payment of the bonds issued before the collection of such assessment, and such proceeds of the collection of the special assessment were to have been used only in payment of such bonds." Plaintiff's main case in support of its position is *Village of Brookfield v. Pentis,* 101 F. (2d) 516. There it was charged that the Treasurer made improper distribution and used the special assessment fund to purchase at a discount special assessment bonds for his own account; that he would redeem such bonds with special assessment funds at par, even though there were not sufficient moneys in any installment to redeem all outstanding bonds against it at par; that the Treasurer had misappropriated to his own personal use the special assessment collections and had made wrongful and secret profits therefrom. The Village prayed for a decree directing the Treasurer and his successors to repay and restore the trust funds, viz., moneys misappropriated, misapplied or lost and profits illegally retained by Pentis. It was held that even though the Village was trustee of the funds it could, however, maintain a suit in equity for an accounting to recover from the Treasurer the special assessment moneys converted by him to his own personal use together with any secret profits he made. The Statute of Limitations was not involved in that case, but the defendants' motion to dismiss on the ground that the plaintiff had an adequate remedy at law and that the Village was not a trustee of the funds, raised the question as to whether or not a trust was involved. While the court stated (p. 519) that "The money was received with other village funds in trust by the treasurer *as agent for the village* . . . ," it held that the matter involved an "active express trust," which gave equity jurisdiction. (Italics ours.) In *Ellis v. Ward,* 137 Ill. 509, cited by plaintiff, the

Statute of Limitations was interposed as a defense by the defendant and the plaintiff successfully met that defense on the ground that a trust was involved. That case, however, involved a suit by a *cestui que trust* against the directors, who were trustees. In *Becker v. Billings,* 304 Ill. 190, the Supreme court was called upon to construe the *Ellis* case, as the appellant was insisting that the defendants were trustees of an express trust in whose favor the Statute of Limitations did not run, and they were relying upon the *Ellis* case to support their contention. The Supreme court said (p. 199) : "In the case of *Ellis v. Ward, supra,* the defendants were the directors who had misappropriated the money *and who were still directors of the company when the bill was filed against them.* 'It may be conceded that so long as a trustee continues to exercise his powers as trustee in regard to property that he can be called to an account in regard to that trust, but when he has parted with all control over the property and has closed up his relation to the trust and no longer claims or exercises any authority under the trust, the principles which lie at the foundation of all statutes of limitation assert themselves in his favor and time begins to cover his past transactions with her mantle of repose.' (*Clarke v. Boorman's Exrs.* 18 Wall. 493.)" (Italics ours.) In the instant case, as heretofore stated, Harms, Jr., former Village Treasurer, had ceased to hold that office more than five years before the suit was commenced. In *Orschel v. Rothschild,* 238 Ill. App. 353, the only question involved was whether on a certain written obligation or indemnity the ten year Statute of Limitations of Illinois or the six year Statute of Limitations of Michigan applied. The indemnifying instrument, signed in Michigan, was sent to the plaintiff in Illinois, where the latter resided and where the moneys were payable under the instrument. The court held that under the facts of that case the Illinois Statute of Limitations

applied. We are unable to see wherein *City of Chicago v. Gage,* 95 Ill. 593, cited by plaintiff, has any application to the question now before us. We find no merit in plaintiff's contention I.

As to plaintiff's contention II, that "the plaintiff's suit is not barred by the Five Year Statute of Limitations as Special Assessment Funds are trust funds, both in the hands of the Village and the Treasurer:" Plaintiff argues that the Treasurer, as well as the municipality, is the trustee of special assessment funds, and that he should be held to a strict accountability in connection with his handling of such funds, and should not be permitted to plead the Statute of Limitations. While it is true that special assessment collections are trust funds and plaintiff is a trustee of such funds, it is not the law that the Village Treasurer is also a trustee of the funds. *People v. Village of Bradley,* 367 Ill. 301, was an action in mandamus to compel the Village to pay a contractor for public improvements made by him out of special assessment collections, and a question was presented as to the nature of the funds, and in passing upon the question the court said (p. 307) : "The money collected by the village from the special assessment levied to pay the cost of the improvement constituted a trust fund available to those having legal claims for materials furnished, or labor performed, in the course of the construction of the sewer. . . . We are not impressed with the argument that the village treasurer and not the village is the trustee of the funds." *Village of Broadview v. Toman,* 309 Ill. App. 485, was a suit by the Village against the County Collector to recover from the latter a portion of the special assessment collections retained by him. There also a question arose as to the nature of the funds, and we said (p. 499) : *"In our judgment, no trust relationship between the County Collector and the bondholders of the Village existed,* although a trust relationship would exist

between the Village and the bondholders as to moneys in the custody of the Village from collections of special assessments." (Italics ours.) In support of the instant appeal plaintiff strongly relies upon the case of *Village of Brookfield v. Pentis, supra,* but, as we have heretofore shown, the court there held that the municipality was the trustee of the special assessment fund and charged with all the duties of such a fiduciary, including the obligation to spread the assessment, collect it and make distribution thereof in conformity with the Statute, and that the Treasurer received certain special assessment funds "as *agent* for the village." The instant suit does not present a proceeding between a trustee and a *cestui que trust.* The complaint disavows any claim that the Treasurer received any of the money personally and there is no element of fraud, unjust enrichment or withholding of public moneys from which a constructive trust might be implied. In *Hayward v. Gunn,* 82 Ill. 385, 389, the court said: " 'To exempt a trust from the bar of the statute, it must be, first, a direct trust; second it must be of the kind belonging exclusively to the jurisdiction of a court of equity; and, third, the question must arise between the trustee and the *cestui que trust.'* Angell on Limitations, chap. 16, sec. 166; *The Governor, etc. v. Woodworth,* 63 Ill. 254." (See, also, 37 C. J. 918.) In the instant case Harms, Jr., was *appointed* to the position of Village Treasurer by plaintiff. In that position he was an agent or servant of plaintiff Village and sustained no trust relationship to the bondholders.

Plaintiff's last contention is that the complaint alleges that it had no notice of the breach of trust by the Treasurer until the year 1936 and therefore the Statute of Limitations did not commence to run until that date. There is no allegation in the amended complaint of fraud or concealment. Nor is there any allegation that plaintiff might not, with ordinary diligence, have

discovered the alleged acts at or about the time they occurred. There is no allegation that the Treasurers fraudulently concealed their actions or that they committed any affirmative act or made any representation which would have tended to prevent the discovery of the said acts. Furthermore, the amended complaint alleges that the Village regularly caused to be made audits of the collections and disbursements of the Village Treasurers for the purpose of determining the amount of funds still on hand applicable to the respective special assessments and the installments thereof, and there is no allegation that the audits did not show the acts which form the basis of this suit. The general rule that governs the instant contention is stated in *Skrodzki v. Sherman State Bank,* 348 Ill. 403, 406, 407, as follows:

"The first question arises on the plea of the Statute of Limitations and replication thereto. Section 22 of that statute provides: 'If a person liable to an action fraudulently conceals the cause of such action'from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards.' In *Lancaster v. Springer,* 239 Ill. 472, this section was construed as follows: 'The concealment of a cause of action which will prevent the operation of the Statute of Limitations must be something of an affirmative character designed to prevent, and which does prevent, the discovery of the cause of action. . . . Such concealment must consist of affirmative acts or representations,' citing *Fortune v. English,* 226 Ill. 262, and *Wood v. Williams,* 142 id. 269. In *Keithley v. Mutual Life Ins. Co.,* 271 Ill. 584, this court considered that section. It was there held that mere silence by the person liable is not concealment of a cause of action, but that such concealment must consist of affirmative acts or representations. It was

there also held that fraudulent misrepresentations which form the basis of the cause of action do not constitute a fraudulent concealment in the absence of proof of acts or representations tending fraudulently to conceal the cause of action, and that the rule that the statute begins to run only from the discovery of the fraud does not apply when the party affected by the fraud might with ordinary diligence have discovered it. This is likewise the rule adopted by other courts. *Norris v. Haggin,* 136 U. S. 386, 34 L. ed. 424; *Teall v. Schroder,* 158 id. 172, 39 L. ed. 938; *Hecht v. Slaney,* 72 Cal. 363, 14 Pac. 88; *Clark v. VanLoon,* 108 Iowa 250, 79 N. W. 88."

We feel impelled to state that the position of plaintiff in the instant case does not appeal to our sense of justice, as it is evident that plaintiff's alleged cause of action seeks to hold its agents, the Village Treasurers, liable for acts that were done in pursuance of Section 43 of the Local Improvement Act as amended in 1927, which amendment, as heretofore stated, was declared unconstitutional after Harms, Jr., had ceased to hold the position of Village Treasurer.

In view of our conclusion that the five year Statute of Limitations applies to plaintiff's claim, we do not deem it necessary to consider a number of points argued by defendants in support of the judgment, but we may say, in conclusion, that we are impressed with a contention of defendants, very earnestly advanced, that the Village Treasurer in the instant suit was a ministerial officer; that he was bound to follow the ordinances of the Village and the laws of Illinois; that he had no right to question the constitutionality of any Act of the general assembly; that a public official, so far as ministerial acts are concerned, is not liable to account for acts he performed in good faith under a statute that was declared unconstitutional after the acts had been performed. It would be, in our judgment, a serious reflection upon justice if

the law did not support defendants' contention. However, the law fully supports defendants' contention. (See *Fergus v. Brady,* 277 Ill. 272; *Fahey v. City of Bloomington,* 268 Ill. 386, 389; *People v. Salomon,* 54 Ill. 39, 46.) It would unduly extend this already lengthy opinion to quote what our Supreme court has said upon this subject.

On April 9, 1945, there was presented to this court a motion by defendants to strike from plaintiff's reply brief a certain point that was not raised in plaintiff's brief, and thereafter we entered an order allowing the motion. Thereafter plaintiff, conceding that the point made by defendants in their said motion was a meritorious one, filed a motion for leave to file an amended reply brief, and that motion was reserved to hearing. Upon the oral argument it was agreed that we might consider plaintiff's reply brief but disregard the point in question. It is unnecessary, therefore, for plaintiff to file an amended reply brief, and the motion to file an amended reply brief will be denied.

Plaintiff's case is devoid of equity and the judgment of the Superior court of Cook county is affirmed.

*Judgment affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.