James MANSON, Appellant,

v.

WABASH RAILROAD COMPANY, A Corporation, and John E. Murphy, Respondents.

No. 47343.

Supreme Court of Missouri.

En Banc.

July 11, 1960.

Rehearing Denied Sept. 12, 1960.

Sherman Landau, St. Louis, for appellant.

Ely & Voorhees, Fordyce, Mayne, Hartman, Renard & Stribling, Alphonso H. Voorhees, St. Louis, for respondents.

WESTHUES, Judge.

This case was tried in the Circuit Court of the City of St. Louis, Missouri. A trial resulted in a judgment for defendants. Plaintiff appealed. The case was argued and submitted to Division I of this court on September 30, 1959. In an opinion by Houser, C., the judgment of the trial court was reversed and the case remanded for a new trial. One of the judges of Division I dissented solely on the ground that plaintiff was not entitled to any relief. On transfer to the court en banc, the case was reargued and resubmitted on May 10, 1960.

The conclusion we have reached on resubmission, that is, that plaintiff is not entitled to recover any damages, renders unnecessary a consideration of a number of the points briefed and considered on the first submission, including the point on which the cause was remanded for retrial.

We shall quote and adopt a substantial portion of the opinion written on the first submission. To begin with, we quote and adopt the following:

"This suit as originally filed was an action by James Manson against Wabash Railroad Company, hereinafter 'Wabash,' Claude I. Gabbert, a private watchman for Wabash and John E. Murphy, Chief Special Agent for Wabash, in three counts, for (I) false arrest and false imprisonment, (II) assault and (III) malicious prosecution. Plaintiff prayed for $25,000 damages in each of the three counts. Claude I. Gabbert died before the case was tried. Plaintiff dismissed as to him, and amended the petition by striking out Count III. At the end of plaintiff's case the trial judge sustained a motion for a directed verdict as to

defendant John E. Murphy. At the conclusion of the trial the jury returned a verdict for Wabash. Plaintiff appealed from the ensuing judgment.

"John E. Murphy died after the transcript on appeal had been filed in this court. Wabash suggested the death of Murphy and moved to abate this action on the ground that causes of action for assault and false imprisonment do not survive the death of the wrongdoer; that the liability asserted against Wabash is purely derivative in nature, based upon the acts and conduct of its employees Murphy and Gabbert under the doctrine of respondeat superior; that when Murphy and Gabbert died plaintiff's causes of action died not only as against them but also as against their employer.

"At common law actions in tort did not survive the death of either the wronged or the wrongdoer. State ex rel. National Refining Co. v. Seehorn, 344 Mo. 547, 127 S.W.2d 418; 1 Am. Jur., Abatement and Revival, Sec. 56; 1 C.J.S. Abatement and Revival § 138. Under Sections 537.010 and 537.030 (all section citations refer to RSMo 1949, V.A.M.S.) which are declaratory of the common law, actions for assault and false imprisonment die with the wrongdoer. See Melvin ex rel. McVey v. Evans, 48 Mo.App. 421. Accordingly, plaintiff's causes of action against the individual defendants for assault and false imprisonment perished upon the deaths of Murphy and Gabbert. Did his causes of action against their employer, Wabash, likewise die with them? We think not. The death of one of two or more defendants does not cause a total abatement of an action where the right sought to be enforced survives against the surviving defendants. Sec. 507.-100, subd. 1(2). The causes of action against Wabash survived against Wabash because the party who died (Gabbert) and the party 'surviving' (Wabash), master and servant, were jointly and *severally* liable for assault and false imprisonment committed by the servant in the scope and course of his employment. Blasinay v. Albert Wenzlick Real Estate Co., 235 Mo.App. 526, 138 S.W.2d 721; 1 C.J.S. Abatement and Revival § 122, p. 171. Where there is joint and several liability the injured person may sue all defendants jointly, or either separately."

The question of abatement was considered at length in the divisional opinion. We deem the portion quoted supra sufficient to dispose of the point and we overrule the motion to abate as to defendant Wabash.

The following is a statement of the facts as contained in the opinion on first submission. We are making a few changes and additions and therefore we shall not use quotation marks. Under an easement granted by the City of St. Louis in 1937 Wabash built a double set of railroad tracks through a cut across the northeast portion of Forest Park in that city. A telegraph cable, running along the tracks and about 18 feet from the tracks, was suspended from poles. A footbridge was erected over the tracks for pedestrian traffic. Within a space of 300 feet on either side of the footbridge numerous footpaths led down the embankments on both sides of the cut and across the tracks. There were no "no trespassing" or other signs warning against walking on or across the tracks. Defendant Murphy, Chief Special Agent for Wabash, was head of the railroad's private police force, and defendant Gabbert was a lieutenant therein. Gabbert also held a private watchman's license issued by the City of St. Louis "to serve and act as private watchman" of the railroad and right of way within the limits of the city. Under his license he was entitled to carry a pistol during the actual time and on the premises where he was engaged in the duties of watchman. On May 30, 1951,

plaintiff, a high school boy 16 years old, and his 14-year old friend Billy Barnard went to Forest Park seeking employment as caddies at the golf links in the park. The boys testified they had not caddied for several summers. Unable to find employment, they walked through the park, intending to ride home on a bus. They reached the footbridge. It was a hot day. Instead of crossing the bridge they took a path down the embankment and sat under the bridge in the shade for a while. There were trees nearby in the park but the boys chose the shade under the bridge. The boys then "chinned" themselves on the telegraph cable which was within their reach. Plaintiff weighed 175 pounds and his companion weighed 170. Then they threw rocks at the cable, some of which hit the bridge. They sounded like somebody hitting the bridge with a hammer. (The boys claimed they simply flipped little pebbles with their thumbs, like shooting marbles.) Gabbert, who was patrolling the Wabash property in the park that day, heard some boys hollering. He was then about 300 feet from the footbridge. After he heard the boys' voices, he saw the telegraph pole and wire swinging or swaying back and forth. One boy was hanging on the cable, his whole body going up and down. After that boy jumped down the other jumped on. Gabbert testified that he saw both boys hanging from the cable at the same time. They were swinging back and forth and up and down. As Gabbert approached the footbridge, he heard rocks hitting the steel girders and abutment of the bridge. The boys were sitting on the rail, throwing rocks at the telegraph cable. A streamliner train was due there about that time. Gabbert approached the boys, held out both his railroad badge of authority and his private watchman's badge, and arrested them. Gabbert was armed, but did not point his gun at the boys or threaten to shoot them. (Plaintiff testified that Gabbert did not touch him but aimed his pistol directly at him and threatened to shoot the boys

in the back *if they ran*.) Plaintiff testified that at the time Gabbert told plaintiff that he was under arrest for destruction of property and trespassing, "approximately that." Barnard, plaintiff's companion, testified that as they were walking toward Kingshighway with Gabbert, they stopped under a tree in the shade. Note what Barnard said occurred there:

"Q. And what happened under that tree? A. Well, he stopped us under that tree and told us that we would wait there, that he had already called the police car to come over and pick us up, so we waited around fifteen or twenty minutes and the police never showed up, so he told us we would just walk to the station. He said if you walk naturally no one would know that you had been pinched. We walked up to—

"Q. Did he make any other statement to you at that time? A. He told us if we tried to run he'd shoot us."

Gabbert caused the boys to be taken to the 11th District Police Station in a city police squad car which was intercepted at Kingshighway. The boys were arrested at 3:15 p. m., turned over to the police at 3:45 and released from the station at 5:00 p. m., with orders to return to the station the next day. Thereafter they appeared in Juvenile Court. Gabbert testified that he was "under orders from the Wabash Railroad to protect that property"; that he did not arrest Manson and Barnard at the specific request of Wabash, i. e., Wabash did not tell him to arrest these boys, but that his actions were done in the course of his employment, as a part of his duties and work for Wabash. The boys testified that no property was destroyed. Gabbert testified that he did not know whether the boys did any damage to the property or not. Wabash's expert engineer Koopman testified that the effect of the boys' hanging from the cable was the same as that produced when the cable swayed from wind or ice; that no one could tell whether

there was damage, and it probably did not do any damage, but that hanging and swinging from the cable and the continual flexing of the cable would produce "some weakening effect * * * some wear within the cable; * * * the more one swung or the longer that a person swung, greater number of flexures of course and the greater deterioration of the cable * * * some wearing out of the cable" and that "maybe such an occurrence as this would be just the extra fatiguing influence that would cause them to break."

 Wabash went to the jury on the theory that Gabbert was justified in making the arrest because of plaintiff's violation of the ordinance on trespassing, and his violation of Sec. 560.315, in that plaintiff's presence on the right of way and his acts of swinging on the cable and throwing rocks at it, in Gabbert's presence, gave Gabbert probable cause to believe that plaintiff's actions had impaired or weakened the cable.

Plaintiff contended that the ordinance of the City of St. Louis, Missouri, was invalid and therefore it could not serve as a justification for plaintiff's arrest. It is our opinion that an officer has the right to rely upon the validity of an ordinance in making an arrest until such time as the ordinance is declared to be void. In this case, the ordinance had not been held to be void. We need not pass upon the validity of the ordinance because, in the circumstances, the watchman Gabbert had the right to depend upon its validity. In disposing of this point, we adopt the following from the divisional opinion: "The majority of jurisdictions hold that an officer may be held civilly liable for arrests made under statutes or ordinances subsequently declared invalid. These cases proceed on the theory that an unconstitutional act is void and confers no rights, imposes no duty and affords no protection to anyone acting under it. Miller v. Stinnett, 10 Cir., 257 F.2d 910; Smith v. Costello, 77 Idaho 205, 290 P.2d 742, 56 A.L.R.2d 1020; Annotation

53 A.L.R. 268; 43 Am.Jur., Public Officers, Sec. 284. And see Mechem, The Law of Public Offices and Officers, Sec. 662. Other authorities hold that a legislative act or municipal ordinance is presumed to be valid, Seaboard Nat. Bank of N. Y. v. Woesten, 147 Mo. 467, 48 S.W. 939 [48 L.R.A. 279]; Downing v. City of Joplin, Mo.Sup., 312 S.W.2d 81, and that arrests made by police officers for an act committed in his presence in violation of an ordinance valid upon its face are privileged if the ordinance is later declared invalid; that public officers are entitled to assume the validity of the law they are sworn to uphold and enforce and should not be required to judge of its validity; that it would be contrary to public policy to subject such officers to liability if it should be determined judicially in a subsequent proceeding that the law was invalid. Bricker v. Sims, 195 Tenn. 361, 259 S.W.2d 661; Wichita County v. Robinson, 155 Tex. 1, 276 S.W.2d 509; Village of Dolton v. Harms, 327 Ill.App. 107, 63 N.E.2d 785; Golden v. Thompson, 194 Miss. 241, 11 So.2d 906; Odinetz v. Budds, 315 Mich. 512, 24 N.W.2d 193. We adhere to the minority view. It would tend to lead to a breakdown of local law enforcement to place upon a police officer charged with enforcing ordinances the burden of correctly deciding questions of constitutionality, conformity with state law, etc. (questions which perplex experts in the law and often result in divided opinions by judges and courts) before making an arrest, at the risk of incurring personal liability in a civil action should the ordinance later be invalidated by judicial decision."

 Plaintiff, in his original brief filed on the submission in Division I, urged that Gabbert did not possess the power of arrest. He contended that the St. Louis Board of Police had no authority to confer such power upon a private watchman, and did not do so; further, that the statutes of Missouri do not authorize the St. Louis Board of Police to confer such authority

upon a private watchman. In the divisional opinion, we disposed of this point by saying, "The fifth (point) challenges Gabbert's power of arrest as 'a member of the police force,' a contention settled adversely to appellant in Barnard v. Wabash R. Co., 8 Cir., 208 F.2d 489, and Frank v. Wabash R. Co., Mo.Sup., 295 S.W.2d 16."

Barnard, plaintiff's companion, filed suit in the Federal Court for damages alleged to have been sustained in the arrest involved in the case now before us. The U. S. Court of Appeals, in the Barnard case, supra, affirmed a judgment in that case in favor of the defendants. The Frank case was, like the present case, a suit for damages for false arrest. Frank was alleged to have thrown sticks and rocks at a passenger train of the Wabash. The occurrence took place near the point where the plaintiff in this case and Barnard were arrested. This court affirmed a judgment in favor of the Wabash in the Frank case. In each of those cases, plaintiff's point now under consideration was decided against his contention. However, plaintiff in his brief before this court en banc says that the particular contention now made was not briefed in the Barnard and Frank cases; that, therefore, those cases are not in point. It seems to us that what this court said in the Frank case disposes of plaintiff's point. Note what was said, 295 S.W.2d loc. cit. 20(4, 5): "A policeman is the legal equivalent of the 'watchman' at common law who possessed the power of arrest now vested in what we refer to as peace officers. State v. Evans, 161 Mo. 95, 61 S.W. 590; Porter v. State, 124 Ga. 297, 52 S.E. 283, 2 L.R.A., N.S., 730; 6 C.J.S., Arrest, § 6f. 'Police power' is not synonymous with 'police force,' and a city may supplement the police protection which it provides by authorizing, under appropriate regulations, private persons to perform some of its police functions. McQuillan, Municipal Corporations, 3rd ed., § 45.06. In our opinion this is what was done in this case." Take notice of Sec. 84.340, V.A.M.S., which in express terms empowers the City of St. Louis to regulate and license private watchmen. After a reconsideration of the question, we again rule the point against plaintiff.

 We quote with approval what we said in the first opinion with reference to another point briefed: "Plaintiff makes the point that the court erred in admitting evidence that Gabbert was licensed as a private watchman. Plaintiff contends that all the evidence shows that Gabbert acted solely as a lieutenant of police for Wabash and that it was misleading, irrelevant and deceptive to introduce evidence concerning Gabbert's official capacity because he was not acting under the authority of his license. Under his license Gabbert was authorized to serve as a private watchman for Wabash on its private property and right of way within the limits of the City of St. Louis and 'to make an arrest, in the locations and during the time specified in his license, under the same circumstances as would a member of the police force of the City of St. Louis.' Frank v. Wabash Ry. Co., supra, 295 S.W.2d loc. cit. 21. At the scene of the arrest Gabbert identified himself as a police officer of the Wabash Railroad, but that did not preclude Wabash from showing that Gabbert had official status. He exhibited to plaintiff both his Wabash badge and his private watchman's badge. The conclusion is inescapable that Gabbert was acting in a dual capacity at the time and place in question. There was no error in admitting evidence that Gabbert was licensed as a private watchman."

 We are of the opinion that plaintiff's evidence alone is sufficient for us to rule that Gabbert, the private watchman, was justified in making the arrest in question. Plaintiff and his companion Barnard testified to facts which showed beyond doubt that they were guilty of trespass within view of Gabbert. Plaintiff and Barnard immediately before the arrest was made were engaged in conduct which was at least mischievous. They were guilty of violating a city ordinance and also Sec.

560.315, V.A.M.S. Hanging on a telephone cable will eventually do material damage. One blow with a sharp ax into a large tree may do but little damage but the repetition of such blows will fell the tree. So, hanging on a cable and swinging therefrom by boys weighing 175 pounds may not break the cable but if done many times, it will result in damage. So, too, throwing rocks at the telephone cable is likely to result in material damage. True, the boys said they merely flipped pebbles but when such pebbles hit the bridge, the impact could be heard at a distance. In the circumstances, Gabbert was not only justified in making the arrest but the arrest was clearly within his duty as a watchman. The arrest being justified and authorized, plaintiff's action for damages for false arrest must be denied.

 We are further of the opinion that plaintiff failed to make a submissible case on the theory that Gabbert assaulted plaintiff. The plaintiff and his companion testified that the watchman at no time touched either plaintiff or Barnard. They did say that he pointed a gun at them and threatened to shoot *if they ran.* A police officer, in this case a watchman, may use such means or force as is reasonably necessary in the circumstance to accomplish an arrest. In misdemeanor cases, an officer does not have the right to endanger human life in making an arrest. However, the officer in the first instance is the judge of the manner and means to be taken in making an arrest. Unless a plaintiff can show that unnecessary force was used, courts will protect the officer. 6 C.J.S. Assault and Battery § 23(1), pp. 825, 826; Hutchinson v. Lott, Fla., 110 So.2d 442, loc. cit. 444(1, 2). As a rule, the question of unnecessary force in such cases is a question for a jury. But, there must be evidence to sustain a finding of such force and if no such evidence is present, courts will not permit a judgment against the officer to stand. In Hutchinson v. Lott, supra, the court had under consideration a case wherein an officer attempted to arrest a person committing a misdemeanor in his presence. The person fled and the officer shot several times in an effort to stop the person. The court in reversing a judgment in plaintiff's favor said, 110 So.2d loc. cit. 445(5, 6): "There is no substantial evidence of an unwarranted use of force on the part of the defendant officer in the use of his firearm to deter the plaintiff's flight, and that in itself does not constitute an assault. One cannot with impunity resist *lawful* arrest and then recover damages for the fears engendered in his mind by what he conceives might be a consequence of the arrest. There being no competent proof to sustain the verdict, the judgment must be reversed on that score alone." See also Schell v. Collis, N.D., 83 N.W.2d 422, loc. cit. 425(5).

What is the evidence in this case to support a verdict for plaintiff for an assault committed by an officer in making a lawful arrest? This evidence is no more than that contained in the statement made by plaintiff's companion which we quoted supra. We restate its substance here because in our opinion it shows the attitude of the watchman and also that of plaintiff and his companion. Note that Barnard said that the watchman asked the boys to wait in the shade of a tree until police arrived. When no police officer arrived, what did the watchman tell the boys? According to Barnard, he said that "if you walk naturally no one would know that you had been pinched." Notice that Barnard then started to say, "We walked up to—" when he was interrupted by a question from plaintiff's counsel; then, he told of the watchman's stating that *"if we tried to run* he'd shoot us." (Emphasis supplied.) This evidence clearly demonstrates that the watchman was without malice and was attempting to prevent it being known that the boys were under arrest.

We rule the evidence insufficient to sustain a verdict in plaintiff's favor. Such

**62**

being the situation, it is unnecessary to consider other points briefed. A retrial of the case would be useless. We hereby affirm the judgment of the trial court.

All concur.