**Leonard ROGERS, Appellant,**

v.

**Barbara RULO, Frank Eck, Alvin Klein, Jr., Appellees.**

**No. 82–1728.**

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1983.

Decided July 20, 1983.

Rehearing Denied Aug. 19, 1983.

---

Carol A. Rutter, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., for appellant.

Michael E. Hughes, Associate City Counselor, Robert H. Dierker, Jr., Julian Bush, Assistant City Counselors, St. Louis, Mo., for appellees.

Before LAY, Chief Judge, JOHN R. GIBSON, Circuit Judge, and JONES, District Judge.*

* John B. Jones, United States District Judge for the District of South Dakota, sitting by designation.

LAY, Chief Judge.

Leonard Rogers brought this action for damages pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 (1976) against Officers Barbara Rulo, Frank Eck, and Alvin Klein of the St. Louis Metropolitan Police Department, Police Chief Eugene Camp, and members of the Board of Police Commissioners. Rogers claims that while he was in police custody the defendants deprived him of his rights guaranteed by the fourth, eighth, and fourteenth amendments to the Constitution. The case was tried to a jury in May 1982. The district court granted motions for a directed verdict in favor of Chief Camp and the Board of Police Commissioners at the close of plaintiff's case, and the jury returned a verdict in favor of Officers Rulo, Eck, and Klein. Rogers appeals from the judgment entered on the jury verdict and asserts several points for reversal. For the reasons discussed below, we affirm.

*Facts.*

On July 27, 1980, Officer Rulo observed Rogers tampering with a bicycle attached to the back of a car parked in a hotel parking lot. Upon seeing Rulo's patrol car, Rogers left the area in his own car. Rulo and other officers pursued Rogers at high speed until Rogers broadsided another car at an intersection. Officer Eck arrived on the scene and accompanied Rogers to the hospital, where it was determined Rogers was not seriously injured.

The parties have differing versions of the subsequent events. Rogers testified that while he was seated on a table awaiting X-rays Officer Eck started hitting him in the chest with a flashlight and making abusive comments. Rogers got off the table and ran outside the hospital, stopping only after Eck fired a shot in the air. Eck handcuffed Rogers and took him back to the emergency room. Rogers further testified that Eck jumped on him and hit him with his fist. Rogers stated that he was then taken to police headquarters for booking and was constantly beaten by Officers Eck, Rulo, and Klein with a flashlight, night stick, and "slapper." The three officers took Rogers to a detention cell in a small elevator. Rogers was again allegedly beaten while in the elevator and Officer Klein allegedly kicked him once in the groin. Rogers testified that he told several officers and turnkeys that he was in severe pain due to the kick in the groin and that he required medical attention. No medical assistance was provided.

The police officers testified to a different version of the incident. Eck testified that while he was standing behind the partition in the X-ray room, Rogers bolted out the door and out of the hospital. Eck pursued him and fired two warning shots in the air and Rogers stopped. As Eck attempted to handcuff Rogers, Rogers took a swing at him. Eck slapped Rogers with an open hand to restrain him and returned him to the examining room in the hospital. Eck testified that Rogers was standing to his right, slightly in front of him, and was handcuffed behind his back. Eck turned to speak to a doctor when he felt a tug on his holster. Rogers reached in Eck's holster and pulled out his gun. Rogers pointed the gun at Eck's head and Eck grabbed the cylinder of the gun. Eck wrestled the gun away from Rogers and hit Rogers a few times with his open hand. Eck further testified that the booking process and transfer of Rogers to a detention cell proceeded without incident. Officers Klein and Rulo corroborated Eck's version of the events.

The defendants produced several witnesses who testified that they spoke with Rogers and that he did not request medical attention on July 28 or on the morning of July 29. The defendants suggest the groin injury occurred when Rogers was in a holding cell with nine or ten other prisoners on the morning of July 29. After being removed from the holding cell Rogers was taken to the city jail where he began to complain about the pain. He ran into the nurse's office and demanded treatment. The nurse noted a small amount of swelling in the groin area and noted that Rogers should see the visiting doctor. The doctor examined Rogers later that day and found Rogers had severe pain and tenderness of the scrotum and testicle and sent him to the

emergency room. Surgery was performed on Rogers that night and his left testicle was removed.

### 1. *Police Chief Camp.*

Rogers first contends that the district court erred in granting Police Chief Camp's motion for a directed verdict. Rogers asserts there was sufficient evidence of Chief Camp's deliberate indifference or gross negligence to submit the case to the jury.[1] In his second amended complaint Rogers alleged that Camp personally acted "with callous indifference" and refused to discipline officers he knew to have "vicious propensities." Rogers urges that a police chief may be subject to section 1983 liability if his failure to train, supervise, or discipline reaches a level of "deliberate indifference" to the deprivation of plaintiff's constitutional rights. *See Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.1979) (county may be liable), *cert. denied,* 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); *Popow v. City of Margate,* 476 F.Supp. 1237, 1245–46 (D.N.J.1979) (city may be liable). Rogers further contends that *Owens v. Haas,* 601 F.2d at 1246, holds that evidence of a "single brutal incident" and the personal involvement of several ranking officers is sufficient for purposes of a motion to dismiss to establish the causal link between the county's failure to train and a violation of constitutional rights. *Owens* holds that *Monell v. Department of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), does not require evidence of a repeated course of conduct to impose liability on a county. *Contra Popow v. City of Margate,* 476 F.Supp. at 1246 (expressly rejecting *Owens* single incident standard).

■ Although Rogers urges us to adopt the *Owens* single incident and deliberate indifference standards, we look to our own cases to evaluate the correctness of the directed verdict. In *Taken Alive v. Litzau,* 551 F.2d 196, 200 (8th Cir.1977), we affirmed a directed verdict in favor of the defendant police chief because there was no evidence that the chief caused or consented to the alleged misconduct. There had been no showing of the chief's actual involvement. In *Jennings v. Davis,* 476 F.2d 1271, 1275 (8th Cir.1973), we affirmed the district court's dismissal of a complaint against the police chief and the Board of Police Commissioners. The plaintiffs did not allege that the chief engaged in any affirmative conduct or that he had the duty or ability to intervene to prevent the alleged misconduct. *See also Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976) (no showing of affirmative link between incidents of misconduct and adoption of policy by city and police commissioners); *cf. Wade v. Haynes,* 663 F.2d 778, 782 (8th Cir.1981) (not error for jury instruction to provide that if defendant's conduct was done with callous disregard of plaintiff's right not to be punished in inhumane way a verdict must be returned for plaintiff), *aff'd on other grounds sub nom. Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Putman v. Gerloff,* 639 F.2d 415, 423 (8th Cir.1981) (error to direct verdict in defendant's favor when record contained sufficient evidence from which jury could have concluded that defendant was present at time of misconduct and did nothing to stop it). We find insufficient evidence to show any causal link between Chief Camp's acts or omissions and the alleged misconduct. At most, Rogers' evidence showed that Camp did not personally investigate the facts alleged in the complaint and that Camp knew two of the officers. That is not enough, in our view, under the standard urged by Rogers, to make a case submissible to the jury.[2] We

---

1. The district court also directed a verdict in favor of the Board of Police Commissioners. Rogers does not contest that ruling on this appeal.

2. Rogers complains that the district court erred in sustaining defendants' objections to his questions of Chief Camp about prior incidents of police brutality. We note that the district court sustained the objection only as to the form of the question, that Rogers did not attempt to reformulate the question, and that Rogers made no offer of proof. *See* Fed.R. Evid. 103.

affirm the directed verdict the district court rendered in favor of Camp.

### 2. *Refusal to dismiss potential juror for cause.*

■ Rogers next contends that the dis-·trict court's refusal to dismiss a potential juror for cause, due to his employment as an arson investigator with the St. Louis County Police Department, impermissibly impaired Rogers' right to peremptory challenges. *See Swain v. Alabama,* 380 U.S. 202, 219, 85 S.Ct. 824, 835, 13 L.Ed.2d 759 (1965). Because of the district court's refusal to disqualify the juror, Rogers was required to exercise one of his two peremptory challenges and thus was unable to peremptorily challenge other jurors. Rogers contends that the juror's employment as a police officer required his disqualification as a matter of law. *See McCoy v. Goldston,* 652 F.2d 654, 659 (6th Cir.1981) (in section 1983 action against police officers bias should be presumed when juror deliberately conceals information about her son becoming a probation officer). We disagree.

The juror at issue was an arson investigator, not a police officer, and was employed by a different police department than the defendants. He testified that he felt he could render a fair and impartial verdict. This court previously has rejected a per se theory of implied bias and has required that actual prejudice be shown. *See, e.g., United States v. Archie,* 656 F.2d 1253, 1259 (8th Cir.1981), *cert. denied,* 455 U.S. 951, 102 S.Ct. 1455, 71 L.Ed.2d 666 (1982); *United States v. Kelton,* 518 F.2d 531, 533 (8th Cir.) (per curiam), *cert. denied,* 423 U.S. 1021, 96 S.Ct. 460, 46 L.Ed.2d 394 (1975). We find no abuse of discretion and, absent that, will not interfere with the district court's determination of juror qualifications.

### 3. *Misstatement of law in closing argument.*

Rogers next asserts that defense counsel misstated the law in closing argument. The defense counsel stated in part:

And I anticipate that Judge Filippine is going to read you the instructions, and one of his last instructions will be, you are the judges of the credibility.

Credibility is a term lawyers use which means you have to determine who is telling the truth. He's also going to tell you that for no other reason you could determine that he's lying, under the law; the law says because he was convicted of felonies, and of course, he stated he has been convicted of some felonies, crimes that are punishable for a term of one year or more.

Transcript at 86–87.

Rogers claims error because this statement led the jury to believe that the judge was going to instruct them that Rogers was lying now because he was a convicted felon. Rogers made no objection at the time and asserts that the misstatement is reviewable for plain error. *See United States v. Artus,* 591 F.2d 526, 528 (9th Cir.1979) (per curiam).

■ To reverse for plain error, we must find the error to have been so prejudicial as to result in a "miscarriage of justice." *See United States v. Shaw,* 570 F.2d 770, 773 (8th Cir.1978) (prosecutor's comment in closing argument about defendant's credibility was not prejudicial). Even if defense counsel may have overstepped the proper confines of the law, we do not find the error to be prejudicial. The statement was inarticulate perhaps, but did not go so far as to tell the jury that the judge thought Rogers was lying. We conclude that the statement in and of itself was not so prejudicial as to warrant reversal.[3]

**3.** We also observe that Rogers' counsel had an opportunity to rebut the statement in closing argument, but his argument was not recorded and is not included in the record before us for review. Unless a complete record is presented that includes both arguments, we have no means to evaluate the extent of the alleged prejudicial argument because we are precluded from determining whether opposing counsel explained away the alleged prejudicial effect.

Following closing arguments, the court delivered a proper jury instruction about the credibility of a convicted felon:

### 4. Jury instruction regarding police conduct.

Rogers' final contention is that the district court committed plain error in instructing the jury pursuant to state law regarding police conduct because the instruction did not conform with federal law. The instruction provided:

> Under Missouri law an officer, when stopping a crime, making an arrest, or preventing an escape, may, defend himself/herself as may any other person who is assaulted; but the law does not stop there. The officer must of necessity be the aggressor; the officer's mission is not accomplished when he/she wards off the assault. He/she must press forward and accomplish his/her objective. Because of the duties devolved upon the officer the law throws around him a special protection. His duty is to overcome all resistance, and bring the party to be arrested under physical restraint, and the means he/she may use must be such force as is reasonable [sic] necessary.

Jury instruction no. 10.

The instruction was derived from a Missouri Supreme Court case, *State v. Ford*, 344 Mo. 1219, 1225–26, 130 S.W.2d 635, 638–39 (1939), that Rogers asserts has since been *sub silentio* overruled. *Manson v. Wabash Railroad*, 338 S.W.2d 54, 61 (Mo.1960) (en banc).[4] Rogers argues that the state law standard enunciated in the instruction is incorrect under existing Missouri law and is impermissible under section 1983 and federal constitutional standards. *See Putman v. Gerloff*, 639 F.2d 415, 421 (8th Cir.1981)

(force reasonably justified under the circumstances). Rogers objects specifically to the omission of the phrase "under the circumstances" and the description of the officer as the "aggressor."

Rogers made no objection to the instruction and offered no alternative instruction at trial. Therefore, our review must be limited to determining whether the error is plain error "in the sense that a miscarriage of justice would otherwise result." *Johnson v. Houser*, 704 F.2d 1049, 1051 (8th Cir.1983) (per curiam) (section 1983 action against sheriff); *see* Fed.R.Civ.P. 51. The plain error exception is quite narrow and is limited to the "exceptional case in which error has affected seriously the fairness, integrity or public reputation of judicial proceedings." *Johnson v. Houser*, 704 F.2d at 1052; *see Wright v. Farmers Co-op*, 620 F.2d 694, 699 (8th Cir.1980).

■ We agree with Rogers that the instruction failed to provide a completely accurate statement of the law. A better instruction would have approximated the language we used in *Putman v. Gerloff*, 639 F.2d at 420–21. *See also Roberts v. Marino*, 656 F.2d 1112, 1114 (5th Cir.1981) (reasonableness of force evaluated in light of need, motivation, extent of injury); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (relationship between the need and amount of force used), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). However, under the circumstances we cannot say that the inaccurate instruction constituted plain error. The instruction stated that the means used must be such force as is reasonably

---

The testimony of a witness may be discredited or impeached by showing that the witness has been convicted of a felony, that is, of a crime punishable by imprisonment for a term of years. Prior conviction does not render a witness incompetent to testify, but is merely a circumstance which you may consider in determining the credibility of the witness. It is the province of the jury to determine the weight to be given to any prior conviction as impeachment.
Jury instruction no. 16.

**4.** *State v. Ford* reversed a second degree murder conviction of a town marshal who had killed a misdemeanant forcibly resisting arrest.

The trial court gave an ordinary self-defense jury instruction, but refused to instruct that the marshal had the right to use such force, including deadly force, as was reasonably necessary to effectuate the arrest. The Missouri Supreme Court found that to be error, quoting language similar to the instruction disputed here. 344 Mo. at 1225–26, 130 S.W.2d at 638–39. *Manson*, without citing *Ford*, held that a private watchman functioning as a police officer may use such force as "is reasonably necessary in the circumstance to accomplish an arrest," but that in misdemeanor cases, "an officer does not have the right to endanger human life in making an arrest." 338 S.W.2d at 61.

necessary. Instruction number seven informed the jury of Rogers' liberty interests and his right to be free from unlawful attacks on his physical integrity. Taken together, the instructions properly informed the jury of Rogers' liberty interests and were not so misleading about the appropriate use of force as to require reversal. *See Wright v. Farmers Co-op,* 620 F.2d at 697 (single erroneous instruction will not necessarily require reversal if cured by subsequent instruction, but reversal was required in this instance). Rogers' trial counsel was given the opportunity to object or offer an alternative instruction and chose not to do so. When viewed in the context of the evidence presented and the overall charge given to the jury, we cannot say that the errors in the instruction were so serious as to undermine the fairness of the proceedings.

The judgment of the district court is affirmed.